**Kathleen SILBAUGH, Appellant,**

v.

**Arturo V. RAMIREZ, Appellee.**

No. 01–02–01129–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 19, 2002.

Rehearing Overruled April 14, 2003.

Alice Oliver–Parrott, Philip C. Brashier, Burrow & Parrott, L.L.P., Frederick Thomas Dietrich, Frederick T. Dietrich, PLLC, Houston, for Appellant.

Frank Pinedo, Law Office of Frank Pinedo, Houston, John T. Brennan, Womble Carlyle Sandridge & Rice, PLLC, Mclean, VA, John B. Wallace, Giessel, Barker & Lyman, P.C., Gregg S. Weinberg, Giessel, Stone, Barker & Lyman, Larry D. Thompson, Lorance & Thompson, Houston, for Appellee.

Panel consists of Justices HEDGES, KEYES, and DUGGAN.*

## OPINION

ADELE HEDGES, Justice (Assigned).

Appellee, Arturo V. Ramirez, filed a suit in Texas against appellant, Kathleen Silbaugh, and several other defendants asserting several tort and breach of contract claims related to the investment by Ramirez in a leasing program and loss of his funds from Silbaugh's IOLTA account. Silbaugh filed a special appearance contesting personal jurisdiction. After a hearing, the trial court denied Silbaugh's special appearance, and Silbaugh filed this interlocutory appeal contending that the trial court erred in concluding that (1) she had waived her special appearance and (2) she was subject to specific jurisdiction in Texas. Finding we have jurisdiction to consider this appeal, we affirm the trial court's denial of Silbaugh's special appearance.

## I. Findings of Fact Conclusions of Law

Ramirez urges this Court to disregard the findings of fact and conclusions of law, because the trial court signed them past the 30–day deadline. Findings of fact and conclusions of law for interlocutory appeals are governed by rule 28.1, which states that the trial court may file findings and conclusions but is not required to do so. *See* Tex.R.App. P. 28.1. However, findings and conclusions filed in interlocutory matters are helpful. The trial court has 30 days in which to file such findings and conclusions. *Id.*

■■■■ Here, appellant timely filed her request for findings and conclusions, but the trial court filed the findings and conclusions nine days after the 30 day deadline. Silbaugh also filed a motion for amended or additional findings and conclusions. Historically, late findings and conclusions were a nullity and could not be considered on appeal. *Star Corp. v. Wolfe*, 463 S.W.2d 292, 294 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.). This absolute rule of exclusion is no longer followed. *Id.* If an appellant can show that he was injured by the inability to request additional findings or the inability to properly present his appeal, he is entitled an abatement of the appeal so that he can request additional findings and conclusions. *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

The procedural rules do not preclude the trial court from issuing belated findings and conclusions. *Robles*, 965 S.W.2d at 610. Unless the litigants can show injury, they have no remedy if a trial court files untimely findings and conclusions. *Id.* Neither party requested an abatement of the appeal, and both parties filed motions for amended or additional findings and conclusions. Because neither party alleges

---

* The Honorable Lee Duggan, Jr., former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

harm, and there is no showing of harm in the record due to the trial court's late filing of the findings and conclusions, we overrule Ramirez's request that we not consider the findings of fact and conclusions of law.

## II. Jurisdiction

Silbaugh states in her notice of appeal that she is appealing an "order on defendant Silbaugh's motion to strike plaintiff's petition for want of jurisdiction signed on August 6, 2001." Because appeals of this type of interlocutory order are ordinarily not available, we asked the parties to brief the issue of whether we have jurisdiction of this appeal. We have taken the jurisdictional issue with the case. In a motion previously filed in this Court, Silbaugh appears to argue that her appeal is in fact taken from the denial of her special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002).

■ We have reviewed the clerk's record, which shows that Silbaugh filed her original answer on January 5, 2001. The answer was apparently not verified but contained a special appearance. Silbaugh amended her answer with a verified special appearance on January 22, 2001.[1] On July 5, 2001, Silbaugh filed a verified motion for an order striking Ramirez's petition against her, arguing that the trial court lacked personal jurisdiction over her, citing rule 120a. *See* TEX.R. CIV. P. 120a. It is this motion that the trial court denied on August 6, 2001. This order did not appear, on its face, to be a denial of Silbaugh's special appearance. However, the hearing on the motion consisted of argument, evidence and witnesses regarding Silbaugh's special appearance; and on September 14, 2001 the trial court signed findings of fact and conclusions of law concerning its August 6, 2001 order determining that Silbaugh waived her special appearance and was subject to specific personal jurisdiction.

Accordingly, we conclude that the August 6, 2001 order, in conjunction with its findings of fact and conclusions of law, was a denial of Silbaugh's special appearance that is subject to interlocutory appeal.[2] TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7).

## III. Waiver

Silbaugh challenges the trial court's denial of her special appearance in two issues: (1) the trial court erred in holding that she waived her special appearance by making a general appearance, and (2) the trial court erred in finding that she had sufficient minimum contacts with Texas to support specific jurisdiction. Regarding Silbaugh's first point of error, the trial court found that Silbaugh made a general appearance by: (1) invoking the judgment of the trial court on issues other than the court's jurisdiction; (2) recognizing that the action is properly pending; and (3) seeking affirmative action from the trial court. We find that Silbaugh did not waive her special appearance by making a general appearance.

■ An objection to a Texas court's exercise of jurisdiction over a nonresident must be made by special appearance filed under Rule 120a of the Texas Rules of

---

1. A special appearance may be amended to cure defects such as lack of verification. Tex.R. CIV. P. 120a(1); *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998).

2. *See e.g. Gorman v. Gorman*, 966 S.W.2d 858, 867–68 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) (allowing findings of fact and conclusions of law to supply missing information from court's order awarding sanctions); *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex.App.-San Antonio 1998, writ refused); *Arena v. Arena*, 822 S.W.2d 645, 652 (Tex.App.-Fort Worth 1991, no writ).

Civil Procedure. *See* TEX.R. CIV. P. 120a(2). Rule 120a requires strict compliance. *Morris v. Morris,* 894 S.W.2d 859, 862 (Tex.App.-Fort Worth 1995, no writ). A special appearance must be made by a sworn motion filed prior to any other plea, pleading, or motion that seeks affirmative relief. TEX.R. CIV. P. 120a(1), (2); *Dawson–Austin,* 968 S.W.2d at 323 (noting test for general appearance is whether party requests affirmative relief inconsistent with assertion that trial court lacks jurisdiction). Any appearance before judgment that is not in compliance with Rule 120a constitutes a general appearance. TEX.R. CIV. P. 120a(2); *Kawasaki Steel v. Middleton,* 699 S.W.2d 199, 201 (Tex.1985). A party contesting jurisdiction must not seek affirmative relief on any question other than that of the court's jurisdiction before the disposition of the special appearance is determined. TEX.R. CIV. P. 120a(2) (providing that special appearance shall be heard and determined before any other plea or pleading may be heard). Any intervening appearance to invoke the trial court's judgment about a "question other than the court's jurisdiction" is a general appearance. *Angelou v. African Overseas Union,* 33 S.W.3d 269, 275 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Notwithstanding these limitations, Rule 120a specifically provides: "the issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance." TEX.R. CIV. P. 120a(1).

■ Ramirez argues that Silbaugh invoked general jurisdiction by engaging in discovery unrelated to her special appearance. Before her special appearance was denied, Silbaugh filed a motion to stay discovery based on improper joinder; filed a motion to quash the deposition of August Ghilarducci, a co-defendant noticed by Ramirez; and served non-jurisdictional discovery on Ramirez. Although nothing in Rule 120a specifically limits discovery to matters relating to the special appearance, the Texas Supreme Court, in dicta, interpreted Rule 120a as limiting discovery to facts relevant to the special appearance. *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 800 (Tex.App.-Houston [1st Dist.] 2000, no pet.). This Court previously declined to follow the dicta in *Dawson–Austin,* and instead followed the plain language of the statute. *Minucci,* 14 S.W.3d at 801. The statute does not limit discovery to only those issues that are related to the special appearance. *See* TEX.R. CIV. P. 120a(1). We hold that Silbaugh's use of the discovery process did not constitute waiver of her special appearance. *See Minucci,* 14 S.W.3d at 801.

■ Ramirez further argues that Silbaugh invoked general jurisdiction by filing a motion asking the trial court to quash Ramirez's notice of the deposition of a co-defendant and requesting protection from Ramirez's discovery requests. Silbaugh set the motion for protection for submission on the trial court's docket on July 2, 2001. We recognize that the discovery process includes timely objections to discovery and does not require a defendant to choose between waiving discovery objections and waiving her special appearance. The appearances by Silbaugh were part of the discovery process and did not waive her special appearance. Furthermore, this motion was never heard or ruled on by the trial court. Silbaugh's filing notice of a hearing and setting a hearing on the trial court's docket did not waive her special appearance. *Minucci,* 14 S.W.3d at 800.

■ Ramirez also argues that Silbaugh waived her special appearance by filing a motion to strike Joseph G. Wiegel's intervention and setting it for oral hearing.

This motion was never heard or ruled on by the trial court. Merely setting it for hearing did not waive Silbaugh's special appearance. *Id.* The motion to strike Wiegel's intervention was filed subject to Silbaugh's special appearance and subsequent to Silbaugh's filing her special appearance. Rule 120a makes subsequent matters subject to the special appearance without an express statement to that effect for each matter. *Id.* On July 5, 2001, Silbaugh amended her motion to strike and dropped all bases for dismissal other than the trial court's lack of jurisdiction. The amended motion was heard by the court on July 16, 2001, and the Judge ruled that it was moot based on his having granted Collier's motion to strike. The motion did not request affirmative relief inconsistent with Silbaugh's assertion that the trial court lacked jurisdiction; rather, the motion requested that Wiegel's intervention be stricken because of a lack of jurisdiction over Silbaugh. Furthermore, even if Silbaugh's motion and the trial court's ruling constituted a general appearance, it would subject Silbaugh to jurisdiction only for Wiegel's claims, which were severed from Ramirez's claims. *See Dawson–Austin,* 968 S.W.2d at 324 (holding that rule 120a permits special appearance as to entire proceeding or any severable claim involved therein).

 Finally, Ramirez argues that Silbaugh's attorney, Mr. Dietrich, made a general appearance when he argued in the hearing on Collier's motion to strike Wiegel's intervention. The only discussion by Dietrich at that hearing is as follows:

> THE COURT: All Right. So your burden is to show it's not proper venue under 15.002; or is it the plaintiff's burden?
>
> MR. BRASHIER: Defendants', your Honor.

> MR. DIETRICH: If I may interject, your Honor, it's my understanding the plaintiff has the burden of showing by prima facie evidence; and it's only the defendants' burden to rebut that once the plaintiff has carried the prima facie.

The hearing was not on a motion by Silbaugh, and Silbaugh did not request any relief from the court. Rather, Silbaugh's attorney merely made a statement of law. Thus, she did not make a general appearance through her attorney.

## IV. Personal Jurisdiction

In her second issue, Silbaugh argues that the trial court erred in concluding that she had sufficient minimum contacts with Texas to support specific jurisdiction.

### A. Standard of Review

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court; once this burden is met, the defendant must negate all possible grounds for personal jurisdiction. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). Whether a court has personal jurisdiction over a defendant is a question of law. This determination frequently requires that the trial court resolve questions of fact before deciding the jurisdiction question. *Id.* at 794. When, as here, the trial court issues findings of fact and conclusions of law, we may review the findings of fact on legal and factual sufficiency grounds and review the conclusions of law de novo as a legal question. *Id.* Although we may not review the conclusions of law for factual insufficiency, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.*

### B. Legal Analysis

■ A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause and the Texas long-arm statute are satisfied. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism. w.o.j.). In relevant part, personal jurisdiction under the Texas long-arm statute extends to non-resident defendants who are parties to litigation arising from or related to business they conducted in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). One of the ways in which a nonresident "does business" in Texas is by contracting with a Texas resident, by mail or otherwise, and either party is to perform the contract in whole or in part in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1) (Vernon 1997).

■ Because the Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow, the statute is satisfied if the exercise of personal jurisdiction comports with federal due process. *Marchand,* 83 S.W.3d at 795; *Coleman,* 16 S.W.3d at 113. Federal due process requires both that the nonresident defendant purposefully establish such minimum contacts with the state that he could reasonable anticipate being sued there and that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Coleman,* 16 S.W.3d at 113–14. If the nonresident defendant purposefully avails himself of the privileges and benefits of conducting business in the foreign state, then the state has sufficient contacts to confer personal jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *Marchand,* 83 S.W.3d at 795; *Coleman,* 16 S.W.3d at 113. Random, fortuitous, or attenuated contacts are insufficient. *Marchand,* 83 S.W.3d at 795. It is the quality and nature of the contacts, not their number, that is determinative. *Coleman,* 16 S.W.3d at 113.

■ The minimum contact analysis is divided into general and specific jurisdiction. General personal jurisdiction requires that the contacts in Texas be continuous and systematic and does not require that the cause of action arise from or relate to activities conducted in Texas. *Marchand,* 83 S.W.3d at 796. In contrast, specific jurisdiction requires that the alleged liability arise from and relate to an activity conducted in Texas. *Id.*

### C. Factual Analysis

We review the record regarding Silbaugh's contacts with Texas to determine whether they are sufficient to establish specific jurisdiction. The record contains numerous documents regarding Silbaugh's contacts with Texas including, most notably, Ramirez's affidavit, Silbaugh's deposition, and the trial court's oral hearing on the special appearance at which Silbaugh and Ramirez testified and offered numerous documents admitted into evidence.

■ The record reveals that Silbaugh has never been a resident of Texas and has had no contacts with Texas other than telephone calls, faxes, and mail. Ramirez and his financial advisor, John Hinojosa, reside in Texas. Ramirez received all calls, faxes, and letters regarding the transaction in Texas, and he executed his contract with Silbaugh in Texas.

Silbaugh solicited business with Ramirez while he was in Texas. In January of 1998, Silbaugh participated in a conference call with Ramirez in which she introduced herself and explained her role on the team as escrow agent for the investment program. Ramirez asserts that he relied on misrepresentations made by Silbaugh during this call in deciding to enter into the contract with her. Silbaugh participated

in another conference call with Ramirez in March 1998, wherein Silbaugh explained her duties as escrow agent. Silbaugh answered Ramirez's questions during both calls.

Following the calls, Ramirez entered into a written contract with Silbaugh, that Silbaugh helped draft. Ramirez signed the agreement in Texas and faxed it to Silbaugh. She signed it in Maryland and faxed it back to him. Pursuant to the contract, Ramirez wired his money from his account in Texas to Silbaugh's IOLTA account in Maryland. Thereafter, Silbaugh accepted Ramirez's payment from Texas; she also sent Ramirez a confirmation of funds letter and paid herself $5,000 from Ramirez's money for her services pursuant to the contract. There were telephone calls, faxes and letters from Silbaugh to Ramirez in Texas and from Ramirez to Silbaugh regarding entering into and carrying out the contract between Silbaugh and Ramirez. For example, Ramirez called Silbaugh to give her the wire reference number, and Silbaugh mailed Ramirez the new bank coordinates. In May 1999, Silbaugh mailed a copy of several documents related to the transaction to Ramirez in Texas. Although Silbaugh's responsibilities under the contract were not performed in Texas, the contract required Ramirez to wire funds to Silbaugh's IOLTA account. She knew that Ramirez resided in Texas and either knew or should have reasonably expected that Ramirez was wiring his funds from a Texas bank account. Thus, Silbaugh knew or should have reasonably expected that Ramirez would perform his part of the contract from Texas. See *Clark Adver. Agency, Inc. v. Tice*, 331 F.Supp. 1058, 1059 (N.D.Tex.1971), *aff.,* 490 F.2d 834 (5th Cir. 1974).

Business today is frequently transacted solely by wire communications across state lines, obviating the need for physical presence in the state in which the business was conducted. Therefore, an individual injured in Texas need not go to Maryland to seek redress from a person who caused the injury in Texas while residing in Maryland. We find that Silbaugh's actions were expressly aimed at Texas. Silbaugh purposely availed herself of the privilege of conducting business in Texas, thus invoking the benefits and protections of Texas law. She made assertions to Ramirez to encourage him to enter into a contract with her; she entered into a contract with Ramirez, a Texas resident, that was partially performed in Texas; and she earned money pursuant to that contract. Furthermore, Silbaugh intended that Ramirez rely on such assertions in Texas. Silbaugh has failed to negate all grounds for the exercise of personal jurisdiction.

We find that the exercise of jurisdiction comports with fair play and substantial justice, because Texas has an interest in ensuring that its citizens are protected from breach of contract and tortious acts committed by nonresidents conducting business in Texas. We find that Silbaugh had sufficient contacts with Texas to establish specific personal jurisdiction and that the contacts do not offend traditional notions of fair play and substantial justice.

## V. Conclusion

We hold that Silbaugh is entitled to pursue an appeal of the order complained of in her notice of appeal, because the order is an appealable interlocutory order under rule or statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002). We further hold that there is sufficient evidence to support the trial court's conclusion that Silbaugh's contacts with Texas were sufficient to confer specific personal jurisdiction. Accordingly, this court affirms the trial court's August 6, 2001 order, as read in conjunction with the

trial court's findings of fact and conclusions of law, denying Silbaugh's special appearance based on specific personal jurisdiction.