Opinion issued November 6, 2008








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00228-CV






THOMAS A. ROSS D/B/A RHI CLAIMS SPECIALIST, Appellant


V.


NICON CONSTRUCTION, INC., Appellee






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2007-09985






MEMORANDUM OPINION

 Appellant, Thomas A. Ross d/b/a RHI Claims Specialist ("Ross"), brings this
interlocutory appeal from an order granting a special appearance filed by appellee,
Nicon Construction, Inc. ("Nicon"). We affirm. 

BACKGROUND


 Ross is a Texas resident and a public insurance adjuster licensed in Texas and
Florida. Nicon is a construction company based in Florida. Ronnie Gearhart is an
employee of Nicon who lives and works in Florida, but also has a residence in
Kingwood, Texas. This lawsuit arises out of Nicon's alleged failure to account and
pay commissions owed to Ross pursuant to a written contract for adjusting work he
performed in Florida.

 As a result of several hurricanes that hit Florida in 2004, Nicon found the
demand for construction work greater than it could handle and began looking for
subcontractors to assisting in estimating construction projects with insurance
companies. With Nicon's knowledge and consent, Gearhart contacted people he
knew in the construction business in Texas to see if they were interested in working
for Nicon in Florida. From Florida, Gearhart called Ross in Texas and informed him
of employment opportunities with Nicon in Florida. Gearhart told Ross that any
contract with Nicon must be negotiated and executed by Joseph Lopez, Nicon's
president in Florida.

 In 2004, Gearhart met Ross and representatives of CST Environmental for
lunch in Humble, Texas to discuss the construction market in Florida. At lunch, Ross
expressed interest in working for Nicon, but he and Gearhart did not discuss specifics
of any contract. Gearhart, as an employee and not a director, officer or agent of
Nicon, did not possess the authority to enter into contracts on Nicon's behalf. Ross
negotiated a contract with Lopez by telephone and fax. Ultimately, Nicon faxed a
written contract to Ross, which Ross signed and returned to Nicon by fax. 

 Ross became a licensed insurance adjustor in the state of Florida. Ross also
rented a place to live and pursued other business opportunities beyond his
employment with Nicon while in Florida. All services rendered by Ross and his
employees under the contract with Nicon took place in Florida. Payments pursuant
to Ross' contract were picked up by Ross at Nicon's Florida offices.

 No officers or directors of Nicon ever met with Ross or other subcontractors
in Texas. Nicon does not now nor has it ever carried out business, held employees,
bank accounts, property, phone numbers or offices in Texas. Nicon has no registered 
agent for service of process in Texas. 

 This suit arises from Ross' claim for damages resulting from Nicon's alleged
failure to account and pay for services rendered under the contract with Ross. Nicon
timely filed a motion contesting in personam jurisdiction and requesting a special
appearance. The court below granted Nicon's special appearance.


STANDARD OF REVIEW

 The plaintiff bears the initial burden of pleading allegations sufficient to bring
a nonresident defendant within the personal jurisdiction of a Texas court. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002); Glattly v. CMS
Viron Corp., 177 S.W.3d 438, 445-46 (Tex. App.--Houston [1st Dist.] 2005, no
pet.). Upon filing a special appearance, however, the nonresident defendant assumes
the burden of negating all the bases of personal jurisdiction alleged by the plaintiff. 
BMC Softward, 83 S.W.3d at 793. The existence of personal jurisdiction is a question
of law, reviewed de novo, but that determination must sometimes be preceded by the
resolution of underlying factual disputes. Preussag Aktiengesellschaft v. Coleman,
16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). 
When, as here, the trial court issues findings of fact and conclusions of law, we may
review the findings of fact on legal and factual sufficiency grounds and review the
conclusions of law de novo as a legal question. Silbaugh v. Ramirez, 126 S.W.3d 88,
94 (Tex. App.--Houston [1st Dist.] 2002, no pet.). If there is more than a scintilla
of evidence to support a factual finding, the legal sufficiency challenge fails. Shell
Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc., 84 S.W.3d 830, 836
(Tex. App.--Houston [1st Dist.] 2002, pet. denied). A ruling will be reversed for
factual insufficiency only if it is so against the great weight and preponderance of the
evidence as to be manifestly erroneous or unjust. Id. We treat unchallenged fact
findings as true. Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 632 (Tex.
App.--Dallas 1993, writ denied). We review the trial judge's legal conclusions de
novo. BMC Software, 83 S.W.3d at 794.

IN PERSONAM JURISDICTION

 Texas courts may assert in personam jurisdiction over a nonresident if (1) the
Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of
jurisdiction is consistent with federal and state constitutional due-process guarantees. 
Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); Schlobohm
v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The Texas Long Arm Statute
provides that, "[i]n addition to other acts," a nonresident does business in Texas if it
(1) contracts by mail or otherwise with a Texas resident and either party is to perform
the contract in whole or in part in this state; (2) commits a tort in whole or in part in
this state; or (3) recruits Texas residents, directly or through an intermediary located
in this state, for employment inside or outside this state. Tex. Civ. Prac. & Rem.
Code Ann. § 17.042 (Vernon 1997). 

 Ross's breach of contract claims are based on Nicon's recruitment of him in
Texas for employment in Florida. Thus, the "doing-business" requirement for
jurisdiction under the long-arm statute is met. Nevertheless, the exercise of
jurisdiction under the statute must be consistent with federal and state constitutional
guarantees of due process. Moki Mac, 221 S.W.3d at 575; Schlobohm, 784 S.W.2d
at 356.

 The long-arm statute's broad doing-business language allows the statute to
"reach as far as the federal constitutional requirements of due process will allow." 
Moki Mac, 221 S.W.3d at 575 (quoting Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P. L. C., 815 S.W.2d 223, 226 (Tex. 1991)). Therefore, the
requirements of the long-arm statute are met if an assertion of jurisdiction accords
with federal due-process limitations. Moki Mac, 221 S.W.3d at 575.

 Federal due process demands that (1) the nonresident defendant have
purposefully established sufficient minimum contacts with the forum state and (2)
exercising jurisdiction over the nonresident will not offend traditional notions of fair
play and substantial justice. Int'l Shoe Co. v Washington, 326 U.S. 310, 316, 66 S.
Ct. 154 (1945); Moki Mac, 221 S.W.3d at 575. Minimum contacts are sufficient
when the nonresident defendant "purposefully avails itself of the privilege of
conducting activities within the forum State, thus, invoking the benefits and
protections of its laws." Moki Mac, 221 S.W.3d at 575 (quoting Int'l Shoe Co., 326
U.S. at 319, 66 S. Ct. at 154); Michiana Easy Livin' Country, Inc. v. Holten, 168
S.W.3d 777, 784 (Tex. 2005).

 The "purposeful availment" inquiry of the minimum contacts analysis requires
that we consider three issues. See Michiana, 168 S.W.3d at 784-75. First, only the
defendant's contacts with the forum are relevant, not the unilateral activity of any
third party. Id. at 785. Second, the contacts relied upon must be purposeful, rather
than fortuitous. Id. Third, a defendant must seek some benefit, advantage or profit
by 'availing' itself of the jurisdiction. Id. In contrast, a defendant may purposefully
avoid availing itself of the jurisdiction by structuring its transactions in such a way
as to neither profit from the forum's laws nor be subject to its jurisdiction. Id. 

 Purposeful availment "ensures that a defendant will not be haled into a
jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third
person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct.
2174, 2183 (1985)). Random, fortuitous, or attenuated contacts are insufficient. 
BMC Software, 83 S.W.3d at 795; Silbaugh, 126 S.W.3d at 95. The quality and
nature of the contact is determinative--not their number. Silbaugh, 126 S.W.3d at
95.

Specific Personal Jurisdiction

 A minimum-contacts analysis is divided into general and specific jurisdiction.
Id. General personal jurisdiction requires that the contacts in Texas be continuous
and systematic, but does not require that the cause of action arise from or relate to
activities conducted in Texas. BMC Software, 83 S.W.3d at 796. For a court to
exercise specific jurisdiction over a nonresident defendant, the defendant's contacts
with Texas must be purposeful, and the cause of action must arise from or relate to
those contacts. Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806
(Tex. 2002). Ross does not contend that Nicon's contacts with Texas were sufficient
to establish general personal jurisdiction; thus we consider only whether the state can
exercise specific personal jurisdiction over Nicon.

Purposeful Availment

 In an effort to establish that Nicon had sufficient minimum contacts with
Texas, i.e., purposely availed itself of the privilege of conducting activities within the
State of Texas, Ross relies on Gearhart's contacts with Texas. Specifically, Ross
points to the following:

 1. Gearhart, a Nicon employee, contacted Ross in Texas by telephone
to see if Ross was interested in coming to work in Florida for Nicon;


 2. Gearhart had lunch with Ross in Texas, at which time they discussed
the construction market in Florida. No contract terms were discussed.


 3. Ross, in Texas, negotiated with Lopez of Nicon, in Florida, regarding
the terms of his employment contract.


 4. Nicon faxed a contract to Ross in Texas, which Ross signed and
faxed back to Nicon in Florida.


 In evaluating these contacts to determine whether there was "purposeful
availment, we consider (1) the defendant's contacts only; (2) whether the contacts
were purposeful, rather than fortuitous, and (3) whether the defendant sought some
benefit, advantage or profit by 'availing' itself of the jurisdiction, or whether it
purposefully avoided availing itself of the jurisdiction by structuring its transactions
in such a way as to neither profit from the forum's laws nor be subject to its
jurisdiction. Michiana, 168 S.W.3d at 784-785. 

 Nicon's contacts in this case include allowing Gearhart, its employee, to
contact prior business colleagues in Texas to determine whether they might be
interested in working for Nicon in Florida, and in Lopez's negotiating with and
faxing a contract from Florida to Ross in Texas.

 That Gearhart was originally from Texas and had former business contacts here
is a fortuitous event; thus Nicon's contact with Ross through Gearhart is not a
"purposeful" contact. In addition, Gearhart did not have the authority to negotiate
contract terms with Ross, and, in fact, no contract terms were discussed at their lunch
meeting in Houston. Thus, it cannot be said that Gearhart entered a into contract with
Ross in Texas, which Nicon then ratified, thus subjecting it to personal jurisdiction. 
See Maurice Pierce & Assoc., Inc. v. Computerage, Inc., 608 F. Supp. 173, 177 (N.D.
Tex. 1985) (nothing that "ratification of contract may support an assertion of personal
jurisdiction"). 

 Gearhart's trip to Texas to meet with his former associates, including Ross,
though approved by Nicon, is an attenuated contact with the forum because it is based
merely on the fact that Gearhart had a house in Texas and knew some people in the
construction industry here.

 As such, this case is distinguishable from Astorga v. Connleaf, Inc., 962 F.
Supp. 93 (W.D. Tex. 1996). In Astorga, the defendant, contracted with Carlos
Moran, a Texas-based labor contractor, to recruit migrant workers to harvest tobacco
in Massachusettes. Id. at 94. The defendant corporation worked closely with Moran
by providing him with literature to recruit employees and contracts that were
ultimately signed by the plaintiffs. Id. After Moran recruited the plaintiff migrant
farm workers, the defendant corporation sent Moran a contracting fee, as well as
enough money to pay each plaintiff's travel expenses. Id. at 95. The court held that
these were sufficient minimum contacts to assert jurisdiction over the nonresident
defendant corporation. See id. at 95-96.

 In contrast, in this case, Nicon did not specifically target Texas employees by
hiring a labor recruiter in the state. In Astorga, the nonresident defendant corporation
provided the Texas recruiter it had hired with recruiting materials and actual
contracts, which Moran then presented to the plaintiffs. In this case, Nicon merely
allowed its employee to contact former business associates to see if they were
interested in working for Nicon. No contracts or recruiting materials were given to
Gearhart, and, in fact, Gearhart specifically told Ross that any and all negotiations
would have to take place with Lopez in Florida. Unlike the ongoing recruiting efforts
that Moran provided, which specifically targeted Texas migrant farm workers, Nicon
did not conduct any ongoing recruiting efforts directed at Texas; it merely permitted
Gearhart to contact some former business associates who happened to live in Texas. 

 Therefore, we conclude that Nicon's contacts with Texas, through Gearhart,
were "random, fortuitous, and attentuated," and not a purposeful availment of the
right to conduct activities in the forum state.

 We also note that rather than purposefully seeking some benefit, advantage or
profit by 'availing' itself of Texas jurisdiction, Nicon purposefully avoided availing
itself of the jurisdiction by structuring its transactions in such a way as to neither
profit from the forum's laws nor be subject to its jurisdiction. More specifically, we
note that the contract between Ross and Nicon contained a forum selection clause
designating that Florida law would apply. (1) "[I]nsertion of a clause designating a
foreign forum suggests that no local availment was intended." Michiana, 168 S.W.3d
at 792. As such, a choice-of-law provision should not be ignored in considering
whether a defendant has purposefully availed the benefits and protections of a State's
laws. Id.

CONCLUSION

 Because Nicon did not "purposefully avail itself of the privilege of conducting
activities within the forum State, thus invoking the benefits and protections of its
laws," Moki Mac, 221 S.W.3d at 575 (quoting Int'l Shoe Co., 326 U.S. at 319, 66 S.
Ct. at 154), Nicon lacks sufficient minimum contacts to support an assertion of
specific jurisdiction in Texas. Because Nicon did not have sufficient minimum
contacts to support an assertion of specific jurisdiction in Texas, we need not address
whether Nicon's liability arises from or relates to the forum contacts. See Moki Mac,
221 S.W.3d at 579. 


 We affirm the trial court's interlocutory order granting Nicon's special
appearance. 



 Sherry Radack

 Chief Justice



Panel consists of Chief Justice Radack, Justice Nuchia and Justice Higley.

1. -- 
 
 
 --