Opinion issued May 14, 2009


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00888-CV






NANCY D. TWYMAN, Appellant


V.


WILLIAM EARL TWYMAN, Appellee






On Appeal from the Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 382,408






MEMORANDUM OPINION


 In this interlocutory appeal, appellant, Nancy Twyman, appeals the trial court's
order that denied her motion for special appearance. In her sole issue on appeal,
Nancy argues that the trial court erroneously exerted personal jurisdiction over her
both in her individual capacity and as trustee of the Edna H. Twyman Trust. (1) 

 We affirm.

Background


 On September 13, 1999, Edna executed a trust that named her as the primary
beneficiary. Edna's trust named her daughters, Nancy Twyman and Kathy Twyman
Compton, as trustees. Section 7.08 of the trust contains a choice-of-law provision
which states, "This trust instrument has been executed in the State of Texas, and all
questions pertaining to its validity, construction and administration shall be
determined in accordance with the laws of the State of Texas." The trust assets
primarily resided in Texas, maintained by a Texas branch of Merrill Lynch.

 On March 16, 2006, Nancy executed a promissory note payable to Kathy
Twyman Compton, as a Trustee of the Trust, for $153,419 payable on or before May
31, 2007. Although the note contained a signature block for Edna, she did not sign
it. Nancy later had Edna write her a note, saying that Edna was extending the
promissory note for another year at the same terms as the original agreement. Merrill
Lynch account documents in the record show that multiple checks were written from
the trust to Nancy that total $99,100. 

 On August 18, 2008, appellee, William Earl Twyman, filed an "Application for
Temporary Restraining Order, Temporary Injunction, For Removal of Trustee,
Declaratory Judgment and Lawsuit for Damages." (2) William, Edna's son, filed the
pleading as agent under power of attorney for Edna and sought to remove Nancy as
trustee. William brought the suit pursuant to section 37.005 of the Texas Civil
Practice and Remedies Code (3) to determine theft and conversion by Nancy and
whether Nancy inflicted elder abuse on Edna. The pleadings asserted that Nancy has
"illegally" acted as trustee, "converted hundreds of thousands of dollars from the
Trust for her own use," and "built herself a home [and] paid contractors/suppliers to
do work in her home, all using [Edna's] Trust funds." William further alleged that
Nancy "has threatened, begged, and intimidated [Edna] into signing legal documents
to make her actions appear justified and as though the theft was a legitimate loan,
under a pretense of being done with [Edna's] knowledge and consent." 

 Nancy filed a special appearance stating that she is not a resident of Texas,
does not engage and has not engaged in business in Texas, has not committed a tort
in Texas, does not maintain a place of business in Texas and has no connection with
Texas. Nancy attached her affidavit to her special appearance, stating that during the
period of the trust administration (1999-present) she has lived outside of Texas. She
further stated,

 8. Since the Trust was created, my only contacts with the State of
Texas have been occasional personal visits with my mother,
telephone calls, and exchanging cards and letters. No Trust
business has been transacted in the State of Texas.


 9. All of the acts I perform as Trustee take place in the State of
Georgia.


 10. The assets of the Trust are (i) an investment portfolio maintained
in an investment/brokerage account with the firm of Horner
Townsend & Kent, Inc., of Horsham, Pennsylvania, and (ii) a
promissory note dated March 16, 2006, executed in the State of
Georgia, and according to its terms is to be ". . . construed under
and enforced in accordance with the laws of the State of
Georgia." 

 William filed a response, alleging that Nancy had committed a tort in Texas
and had breached her fiduciary duty as trustee by wrongfully converting Texas trust
funds for her own use and benefit. William further alleged that Nancy executed the
trust agreement; the trust agreement provides that jurisdiction over the trust and its
assets is in Texas; Nancy chose a Texas attorney for Edna and took her to see that
attorney; Nancy has held and managed property in and through Texas; the trust's
main account is located and managed by a Texas branch of Merrill Lynch; and Nancy
accessed trust funds from Texas and transferred the funds to herself. Attached to the
response is Edna's affidavit, in which she states: 

2. The Trust attached to this Response to Special Appearance was
drafted by Betty Adkins. Nancy Twyman traveled to Houston,
chose her as the lawyer, had her draft the trust and asked me to
sign it. I had no input in the choice of Betty Adkins or the
jurisdiction of the trust being Texas. In fact, I had very little input
in the trust at all, but executed it to hopefully buy peace in my
family.


3. Recently Nancy took me to another lawyer named David Munson. 
She traveled to Texas, took me to this lawyer and had me write
him a check for $5,000. A copy of the check is attached to this
response to Special Appearance. She took me to him stating he
was going to protect me and the lawyer proceeded to file a
document which I paid for, to have me declared incompetent. 


4. The hand written document which purports to be an extension of
the promissory note created by Nancy Twyman was dictated by
her to me. She wanted me to write it in my own handwriting. 
This document was dictated by her to me in Texas.


5. Nancy should be accountable as my Trustee in Texas. I should
not have to travel to Georgia to get the money back that she took
as my Trustee. She freely travels to Texas each time that she
wants me to sign a document or go to a lawyer.


 Also attached to the response is Williams's affidavit in which he states:

3. Since the execution of the Trust Agreement in 2000, Nancy
Twyman, Individually and as Trustee has engaged in business in
Texas by managing and handling Trust assets and has committed
a tort, in its entirety by converting funds from that account in
Harris County, Texas. The tort was, therefore, committed in
whole or in part within the state. She is happy to convert assets
of my mother in this state but not be held accountable in the state
where she allegedly served as Trustee and used and abused that
position to convert these funds.


4. I am personally familiar with Nancy Twyman's actions as
Trustee. She has converted Trust funds for her own use by
withdrawing funds from my mother's account. She has
personally admitted to me that she took the funds, that she cannot
pay them back. She has further had my mother execute
documents in the State of Texas purporting to be loan documents
to Nancy Twyman. The funds for the alleged loan came from the
Texas Trust account.


On October 1, 2008, the trial court denied Nancy's special appearance. 

Personal Jurisdiction


 Whether a court has personal jurisdiction over a defendant is a question of law
subject to de novo review. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 794 (Tex. 2002); Glattly v. CMS Viron Corp., 177 S.W.3d 438, 445 (Tex.
App.--Houston [1st Dist.] 2005, no pet.). The trial court, however, must frequently
resolve questions of fact before deciding the jurisdiction question. BMC Software,
83 S.W.3d at 794. If the trial court enters an order denying a special appearance and
issues findings of fact and conclusions of law, we may review the findings of fact on
legal and factual sufficiency grounds and review the conclusions of law de novo as
a legal question. Silbaugh v. Ramirez, 126 S.W.3d 88, 94 (Tex. App.--Houston [1st
Dist.] 2002, no pet.) (citing BMC Software, 83 S.W.3d at 794). 

 If the trial court does not issue findings of fact and conclusions of law, as here,
"all facts necessary to support the judgment and supported by the evidence are
implied." BMC Software, 83 S.W.3d at 795. In other words, if the trial court does
not issue findings of fact, a reviewing court should presume that the trial court
resolved all factual disputes in favor of its judgment. Tri-State Bldg. Specialties, Inc.
v. NCI Bldg. Sys., L.P., 184 S.W.3d 242, 246 (Tex. App.--Houston [1st Dist.] 2005,
no pet.) (citing American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801,
806 (Tex. 2002)). These findings are not conclusive when the appellate record
includes both the reporter's and clerk's records, and they may be challenged for legal
and factual sufficiency on appeal. Id. To the extent that the underlying facts are
undisputed, however, we conduct a de novo review. Glattly, 177 S.W.3d at 445.

 Two requirements must be met before a Texas court can exercise personal
jurisdiction over a nonresident defendant. First, the Texas long-arm statute must
authorize the exercise of jurisdiction, and, second, the exercise of jurisdiction must
be consistent with the guarantees of due process. Coleman, 83 S.W.3d at 806; Tri-State, 184 S.W.3d at 248.

 The long-arm statute permits Texas courts to exercise personal jurisdiction over
a nonresident (4) defendant who "does business" in Texas. Tex. Civ. Prac. & Rem.
Code Ann. § 17.042 (Vernon 1997); BMC Software, 83 S.W.3d at 795. The statute
lists three activities that constitute "doing business": (1) contracting with a Texas
resident when either party is to perform the contract in whole or in part in Texas;
(2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents
for employment inside or outside of Texas. Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042. This list, however, is not exclusive, (5) and the statute's "doing business"
requirement is limited only by the requirements of federal due process guarantees. 
Koll Real Estate Group, Inc. v. Purseley, 127 S.W.3d 142, 146 (Tex. App.--Houston
[1st Dist.] 2003, no pet.) (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex.
1990)).

 Because the language of the long-arm statute is broad, its requirements are
considered satisfied if the exercise of personal jurisdiction comports with federal due
process limitations. CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996). In practice,
the two conditions are combined into one requirement of due process. Wright v. Sage
Eng'g, Inc., 137 S.W.3d 238, 247 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). 
Thus, the true determinative inquiry is one of federal constitutional due process. See
id.; see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991).

 With respect to personal jurisdiction, federal due process requires two things. 
First, the nonresident defendant must have purposefully established such minimum
contacts with the forum state that the defendant could reasonably anticipate being
sued there. Glattly, 177 S.W.3d at 447 (citing Burger King Corp. v. Rudzewicz, 471
U.S. 462, 475-76, 105 S. Ct. 2174, 2183-84 (1985)). Second, if the nonresident
defendant has purposefully established minimum contacts with the forum, the
exercise of personal jurisdiction must also comport with traditional notions of fair
play and substantial justice. Id. (citing Burger King, 471 U.S. at 475-76, 105 S. Ct.
at 2183-84). As to fairness, the defendant bears the burden of presenting a
"compelling case" that exercising jurisdiction over him would not be fair and just. 
See id. at 450. Only in rare cases, however, will a Texas court's exercise of personal
jurisdiction not comport with fair play and substantial justice when the nonresident
defendant has purposefully established minimum contacts with the forum state. 
Guardian Royal Exch. Assurance, 815 S.W.2d at 231.

 A nonresident establishes minimum contacts with Texas by purposefully
availing itself of the privileges and benefits inherent in conducting business in the
state. Michiana Easy Livin'Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex.
2005); Koll, 127 S.W.3d at 146. The touchstone of jurisdictional due process is
"purposeful availment," i.e., "it is essential in each case that there be some act by
which the defendant purposefully avails itself of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its laws."
Michiana, 168 S.W.3d at 784 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.
Ct. 1228, 1240 (1958)) (emphasis in Michiana). Three aspects of the requirement are
important in this case, as in Michiana: (1) only the defendant's contacts with the
forum count, not the unilateral activity of another party or person; (2) the acts relied
on to establish jurisdiction must be "purposeful" rather than fortuitous; and (3) the
defendant must seek some benefit, advantage, or profit by "availing" itself, or
himself, of the jurisdiction. Id. at 785. It is the quality and nature of the defendant's
contacts, rather than their number, that is important to the minimum-contacts analysis. 
Trigeant Holdings, Ltd. v. Jones, 183 S.W.3d 717, 725 (Tex. App.--Houston [1st
Dist.] 2005, pet. denied). Random, fortuitous, or attenuated acts, or the unilateral acts
of a third party, are not sufficient to confer personal jurisdiction. Id. Although not
determinative, foreseeability is an important consideration in deciding whether a
nonresident defendant has purposefully established minimum contacts. Glattly, 177
S.W.3d at 446-47.

 The minimum contacts element of due process is further divided into specific
and general personal jurisdiction. Id. at 447. A court may exercise specific
jurisdiction over a nonresident defendant if his alleged liability arises from, or is
related to, an activity conducted within the forum. Id. (citing CSR, 925 S.W.2d at
595). The contacts must be purposefully directed at the forum and have a "substantial
connection" that results in the alleged injuries. Shell Compañia Argentina de
Petroleo, S.A. v. Reef Exploration, Inc., 84 S.W.3d 830, 837 (Tex. App.--Houston
[1st Dist.] 2002, pet. denied). We focus our analysis on the relationship among the
defendant, the forum, and the litigation.  Id. 

 A court may exercise general jurisdiction over a nonresident defendant if the
defendant's contacts with the forum state are continuous and systematic, even if the
cause of action did not arise from or relate to the defendant's contacts with the forum. 
Glattly, 177 S.W.3d at 447. In confining one's activities to another forum, "a
nonresident may purposefully avoid a particular jurisdiction by structuring its
transactions so as neither to profit from the forum's laws nor be subject to its
jurisdiction." Michiana, 168 S.W.3d at 785. For the court to have specific
jurisdiction, the nonresident defendant must have established minimum contacts by
purposefully availing itself of the privilege of conducting activities in Texas, and
there must be a substantial connection between those contacts and the operative facts
of the litigation. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 576, 585
(Tex. 2007). 

 The plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the Texas long-arm statute. BMC
Software, 83 S.W.3d at 793. A nonresident defendant challenging the court's
exercise of personal jurisdiction through a special appearance carries the burden of
negating all grounds for personal jurisdiction alleged by the plaintiff. Id.; Glattly,
177 S.W.3d at 446.

Analysis


 In her first issue, Nancy argues that she is not amenable to jurisdiction in
Texas. She specifically asserts that she is not a resident of Texas, that she has not
done anything to establish minimum contacts with Texas, and that "all of her actions
with regard to the Trust at issue and the allegations on which this action is founded
occurred outside of the state of Texas." (6) Nancy further argues that the choice of law
provision in the trust agreement is "simply expressing that Texas Law should apply
to any questions or issues related to the Trust." 

 William relies on Burger King v. Rudzewicz to show that although a choice-of-law provision is not dispositive, it is an important indicator. See 471 U.S. 462, 105
S. Ct. 2174 (1985). In Burger King, the Supreme Court upheld jurisdiction in Florida
over a Michigan franchisee because the franchise dispute arose directly from a
contract that would have yielded numerous benefits in Florida, a substantial amount
of information was transmitted to and from Florida, and the contract provided that the
parties would be governed by Florida law. The Supreme Court stated, 

Nothing in our cases . . . suggests that a choice-of-law provision should
be ignored in considering whether a defendant has 'purposefully
invoked the benefits and protections of a State's laws' for jurisdictional
purposes. Although such a provision standing alone would be
insufficient to confer jurisdiction, we believe that, when combined with
the 20-year interdependent relationship Rudzewicz established with
Burger King's Miami headquarters, it reinforced his deliberate
affiliation with the forum State and the reasonable foreseeability of
possible litigation there. 


Id. at 482, 105 S. Ct. at 2187.

 In Alenia Spazio, S.P.A. v. Reid, 130 S.W.3d 201 (Tex. App.--Houston [14th
Dist.] 2003, pet. denied), the court discussed a contract between an Italian company
and a Texas corporation that contained a Texas choice-of-law provision. Reid had
asserted that, by agreeing to a Texas choice-of-law provision, Alenia availed itself of
the benefits and protections of Texas law and consented to being sued in Texas. Our
sister court disagreed, determining that agreeing to a Texas choice-of-law provision,
without more, did not mean a party availed itself of any protection from Texas courts
or voluntarily submitted to personal jurisdiction in Texas courts, absent an express
understanding to that effect. Id. at 219; see also 3-D Elec. Co. v. Barnett Constr. Co.,
706 S.W.2d 135, 145 n.9 (Tex. App.--Dallas 1986, writ ref'd n.r.e.) ("[A]lthough a
'choice of law' provision in a contract is significant in determining whether
jurisdiction should be had in the forum state, such a provision cannot be construed
as a voluntary submission by a defendant to the personal jurisdiction of the courts of
the state in the absence of any express understanding to that effect.") (citations
omitted). There was no evidence in Reid of an express understanding that Alenia
submitted to the jurisdiction of Texas courts by executing the contract. 

 We agree that a choice-of-law provision, by itself, does not establish personal
jurisdiction, although it is a consideration. See Burger King, 471 U.S. at 482, 105 S.
Ct. at 2187; Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 125 (Tex.
App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Here, in addition to the choice-of-law provision requiring Texas law, and contrary to Nancy's assertions in her brief,
the evidence also shows that Nancy came to Texas for the purpose of setting up a
trust and taking Edna to a Texas attorney to sign the trust. It is alleged that Nancy
managed the Texas trust, and its primary assets were held by a company doing
business in Texas. She also signed a promissory note, payable to a co-trustee, that
allegedly affects Edna's trust assets located in Texas. Nancy also traveled to Texas
to have Edna sign a document extending the terms of the promissory note that Edna
never signed. Nancy again traveled to Texas to take Edna to see a Texas attorney so
that Edna could be declared incompetent, an act which, had it been successful, would
have had ramifications for the trust. The allegations and evidence further show that
Nancy received extensive trust funds from Edna's trust, the receipt of which could be
a breach of her fiduciary duty. After considering all of this evidence, we conclude
that Nancy established minimum contacts with Texas by purposefully availing herself
of the benefits of Texas law. 

 For the trial court to exert specific jurisdiction over Nancy, there must be a
substantial connection between Nancy's contacts with Texas and the operative facts
of the litigation. See Moki Mac, 221 S.W.3d at 576. The operative facts of the
litigation surround Nancy's alleged breach of fiduciary duty, which involves taking
Edna's trust assets for herself. The situs of the trust is Texas. Nancy traveled to
Texas a number of times to facilitate business with the trust, and the evidence
suggests that she came to Texas to further her alleged breaches of fiduciary duty. It
is further alleged that Nancy withdrew funds from Texas to pay herself and that the
promissory note that may affect the trust was illegal. None of these allegations have
been contradicted. We conclude that a substantial connection exists between Nancy's
contacts with Texas and the operative facts of the litigation. We further conclude that
Nancy had the requisite minimum contacts with Texas to be subject to specific
jurisdiction.

 Because Nancy had the requisite minimum contacts with Texas, we next
determine whether the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Nancy had the burden to present a "compelling case"
that exercising personal jurisdiction over her would not comport with fair play and
substantial justice. See Guardian Royal Exchange Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 231 (Tex. 1991). The fairness inquiry is judged by
a "stringent standard" and is met only in "rare cases." Id. On appeal, Nancy makes
no argument that exercising jurisdiction over her would offend traditional notions of
fair play and substantial justice. Accordingly, we conclude that this point is waived. 
See Tex. R. App. P. 33.1; Glattly, 177 S.W.3d at 451. Even if the point were not
waived, we would necessarily conclude that, based on her contacts with Texas,
exercising jurisdiction over Nancy would not offend traditional notions of fair play
and substantial justice.

 We overrule Nancy's sole issue.

Conclusion


 We affirm the trial court's order that denied Nancy's special appearance.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.
1. Although Nancy asserts that the trial court erred in exerting jurisdiction over her both
in her individual capacity and as trustee, in her brief, Nancy does not explain her
argument regarding capacity. Rather, her brief is limited to a general complaint that
the trial court erred in exerting jurisdiction over her. 
2. On August 20, 2008, the trial court granted a temporary restraining order. At a later
hearing, the trial court granted a temporary injunction and appointed a receiver for the
trust funds. The appeal of the injunction order and the receiver order is currently
pending in this Court in cause number 01-08-00904-CV. 
3. See Tex. Civ. Prac. & Rem. Code Ann. § 37.005 (Vernon 2008). Section 37.005
provides, 


 A person interested as or through an executor or administrator,
including an independent executor or administrator, a trustee, guardian, other
fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the
administration of a trust or of the estate of a decedent, an infant, mentally
incapacitated person, or insolvent may have a declaration of rights or legal
relations in respect to the trust or estate:


 (1) to ascertain any class of creditors, devisees, legatees,
heirs, next of kin, or others;


 (2) to direct the executors, administrators, or trustees to do
or abstain from doing any particular act in their fiduciary
capacity;


 (3) to determine any question arising in the administration of
the trust or estate, including questions of construction of
wills and other writings; or


 (4) to determine rights or legal relations of an independent
executor or independent administrator regarding
fiduciary fees and the settling of accounts. 


Id.
4. A "nonresident" includes "an individual who is not a resident of [Texas]" and "a
foreign corporation, joint-stock company, association, or partnership." Tex. Civ.
Prac. & Rem. Code Ann. § 17.041 (Vernon 1997).
5. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002)
.
6. In her brief, Nancy argues that the "record does not support a finding that the trust
situs is located in Harris County, Texas." Nancy relies on section 115.002(b) of the
Texas Property Code. See Tex. Prop. Code Ann. § 115.002 (Vernon 2007). In his
response to Nancy's special appearance motion, William stated, "Venue over Nancy
Twyman is proper pursuant to Section 115.002 in that during the period of the
conversion by Nancy, multiple trustees were serving and the situs of the Trust was
Kingwood, Harris County, Texas." We decline to address Nancy's challenge to venue
because no venue challenge was made to the trial court.