ACCEPTED
01-15-00232-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/8/2015 5:18:58 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00232-CV
**ACCELERATED APPEAL**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/8/2015 5:18:58 PM

CHRISTOPHER A. PRINE
Clerk

IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS

*Nationwide Distribution Services, Inc.,*
Appellant

*vs.*

*Robert Jones and Poly Trucking, Inc.*,
Appellees

**BRIEF OF APPELLANT**

Jack McKinley
State Bar No. 13716300
Robert L. Ramey
State Bar No. 16498200
RAMEY, CHANDLER, QUINN & ZITO, P.C.
750 Bering, Suite 600
Houston, Texas 77057
Telephone: (713) 266-0074
Facsimile: (713) 266-1064
jmm@ramey-chandler.com

COUNSEL FOR APPELLANT

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant, Nationwide Distribution Services, Inc., does not believe that oral argument is necessary in order to fully present its position to the Court, but would be pleased to participate if the Court finds a use for it.

**RECORD REFERENCES**

All references to the clerk's record are as follows: (CR [*vol.*][*pg.*]), with (CR [*vol.*] at [page:line] to [page:line] indicating a citation to the internal pagination of a deposition)

All references to the reporter's record are as follows: (RR [*vol.*] [*pg.*]).

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **APPELLANT:** | **Nationwide Distribution Services, Inc.** |
| COUNSEL FOR APPELLANTS: | Jack McKinley<br>State Bar No. 13716300<br>Ramey, Chandler, Quinn & Zito, P.C.<br>750 Bering, Suite 600<br>Houston, Texas 77057<br>Telephone:  (713) 266-0074<br>Facsimile:   (713) 266-1064<br>jmm@ramey-chandler.com |
| **APPELLEE:** | **Robert Jones** |
| COUNSEL FOR APPELLEE<br>ROBERT JONES: | Jason A. Itkin<br>State Bar No. 24032461<br>Cory D. Itkin<br>State Bar No. 24050808<br>Noah M. Wexler<br>State Bar No. 24060816<br>Arnold & Itkin, LLP<br>6009 Memorial Drive<br>Houston, Texas 77007<br>Telephone:  (713) 222-3800<br>Facsimile:  (713) 222-3850<br>e-service@arnolditkin.com |
| **APPELLEE:** | **Poly Trucking, Inc.** |
| COUNSEL FOR APPELLEE<br>POLY TRUCKING, INC.: | Ruark D. Mershon<br>State Bar No. 24037100<br>2000 W. Marshall Drive<br>Grand Prairie, Texas 75051<br>Telephone:  (972) 337-7692<br>Facsimile:  (972) 337-8139<br>ruarkm@poly-america.com |

**TABLE OF CONTENTS**

                                                                        Page(s)

Statement Regarding Oral Argument. ......................................................... ii

Record References. ................................................................................. ii

Identity of Parties and Counsel. ............................................................. iii

Table of Contents. ................................................................................. iv

Index of Authorities. ............................................................................. vii

Statement of The Case. .......................................................................... 1

Statement of Jurisdiction. ....................................................................... 1

Issues Presented. .................................................................................... 1

Statement of The Facts. .......................................................................... 1

Summary of the Argument. ..................................................................... 6

Test for Personal Jurisdiction; Standard of Review. ................................ 9

ARGUMENT. ......................................................................................... 12

    I.     There is no general jurisdiction over NDS because it has no
          continuous and systematic contacts with Texas. ............................... 12

          A.    NDS' Georgia contract to manage a Georgia warehouse for
               a Texas company with national operations is not a
               "contact" with Texas. .............................................................. 14

          B.    That Kimberly Clark has its headquarters and accounting
               department in Texas, and so NDS sent bills to Texas, is no
               basis for personal jurisdiction. ................................................ 18

II.   There is no specific jurisdiction over NDS because its "contacts" with Texas are far below the constitutional minimum. ...................... 22

    A.   Jones did not even allege that NDS committed a tort or took any action *in* Texas, as required for specific jurisdiction......... 23

        (1)   Jones alleged and the evidence shows that NDS loaded the cargo in Georgia, pursuant to its duties there as a warehouseman. .............................................. 23

        (2)   The Kimberly Clark-NDS contract for warehouseman services in Georgia states that it is governed by Wisconsin law........................................... 24

        (3)   Absent alleged contacts by NDS with Texas, NDS' Special Appearance had to be sustained because it is a foreign citizen. ........................................... 25

    B.   Effects within the forum from the act of a party operating entirely outside the forum do not support specific jurisdiction . ................................................................... 26

III.   NDS did not waive its Special Appearance by participating in merits-related discovery and filing or joining non-dispositive motions. ..................................................................... 27

    A.   Participating even in merits discovery does not deliberately relinquish a challenge to personal jurisdiction......................... 28

    B.   Merits-related motions for discovery and continuance may be important to defending a lawsuit if a special appearance is denied. ............................................................ 37

Conclusion and Prayer. ...................................................................... 42

Certificate of Compliance. ................................................................. 43

Certificate of Service. ........................................................................ 44

Appellants' Appendix. ....................................................................... 45

# INDEX OF AUTHORITIES

Cases                                                                             Page(s)

*American Type Culture Collection, Inc. v. Coleman*,
 83 S.W.3d 801 (Tex. 2002)........................................................................ 28, 40

*Anderson v. Bechtle*,
 2001 WL 930205, p. 2 (Tex. App.—Houston [1st Dist.] 2001) (unpublished)
................................................................................................................ 32, 41

*BMC Software Belguim, N.V. v. Marchand*,
 83 S.W.3d 789 (Tex. 2002).............................................................................. 11

*Burger King*,
 471 U.S. 462, 105 S.Ct. 2187. ........................................................................ 24

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462, 105 S.Ct. 2174 (1985)........................................................ 10, 18

*Dawson-Austin v. Austin*,
 968 S.W.2d 319 (Tex. 1998)................................................................. 32, 33, 34

*Exito Electronics Co., Ltd. v. Trejo*,
 142 S.W.3d 302 (Tex. 2004)....................................................... 33, 34, 35, 36, 41

*First Oil, PLC v. ATP Oil & Gas Corp.*,
 264 S.W.3d 767 (Tex. App. —Houston [1st Dist.] 2008). ................................. 34

*Forest River, Inc. v. Quality Frames, Inc.*,
 2005 WL 615424 (Tex. App.—Houston [1st Dist.] 2005)
 (memorandum opinion)........................................................................ 34, 36, 41

*Freudensprung v. Offshore Technical Services, Inc.*,
 379 F.3d 327 (5th Cir. 2004)............................................................................ 19

*Gutierrez v. Cayman Islands firm of Deloitte & Touche*,
 100 S.W.3d 261 (Tex.App.—San Antonio 2002)............................................... 37

*Helicopteros Nacionales De Colombia v. Hall*,
   466 U.S. 408, 104 S.Ct. 1868 (1984)........................................................ 10, 11, 26

*Helicopteros Nacionales*,
   466 U.S. 417, 104 S.Ct. 1873. ................................................................. 19, 26

*Horizon Shipbuilding, Inc. v. Blyn II, Holding, LLC*,
   324 S.W.3d 840, 846  (Tex.App.—Houston [14th Dist.] 2010). .......................... 40

*Horowitz v. Berger*,
   377 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2012). ................................ 36

*In Re Stern*,
   321 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2010). ........................ 34, 35, 36

*In re: Alford Chevrolet-Geo*,
   997 S.W.2d 173 (Tex. 1999)................................................................. 38

*In re Doe*,
   443 S.W.3d 603 (Tex. 2014)................................................................. 14

*In re City of Georgetown*,
   53 S.W.3d 328 (Tex. 2001)................................................................. 31

*Jernigan v. Langley*,
   111 S.W.3d 153 (Tex. 2003)................................................................. 28

*Kelly v. General Interior Construction, Inc.*,
   301 S.W.3d 653 (Tex. 2010)............................................................ 25, 26

*Lisitsa v. Flit*,
   419 S.W.3d 672 (Tex. App.—Houston [14th Dist.] 2013). ................................ 37

*Luther Transfer & Storage v. Walton, Inc.*,
   296 S.W.2d 750 (Tex. 1956)................................................................. 16

*Luv N' care, Ltd. v. Insta-Mix, Inc.*,
   438 F.3d 465 (5th Cir.2006). ................................................................. 17

*Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*,
  12 F.3d 58 (5th Cir. 1992).................................................................. 13

*Michiana Easy Livin' Country, Inc. v. Holten*,
  168 S.W.3d 777 (Tex. 2005)............................................... 20, 21, 24, 26

*Minucci v. Sogevalor, S.A.*,
  14 S.W.3d 790 (Tex. App.—Houston [1[st] Dist.] 2000). .................................... 33

*Moki Mac Expeditions v. Drugg*,
  221 S.W.3d 569 (Tex. 2007) (CR 71)....................................... 22, 23

*Moncrief Boil International, Inc. v. OAO Gazprom*,
  414 S.W.3d 142 (Tex. 2013)........................................................... 12, 23

*National Industrial Sand v. Gibson*,
  897 S.W.2d 769 (Tex. 1995)............................................................ 27

*Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
  2006 WL 1030185, p.4  (Tex.App. —Ft. Worth 2006) (unpublished)............... 40

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*,
  235 S.W.3d 163 (Tex. 2007)............................................................ 11

*Polycomp Administrative Services, Inc. v. Jackson*,
  2010 WL 1611760 (Tex. App.—Houston [1[st] Dist.] 2010). .......................... 21, 24

*Robertson v. Hensel Phelps Construction Co.*,
  1999 WL 233599, p. 1 (Tex.App.—Houston [1[st] Dist.] 1999). ........................... 40

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*,
  9 F.3d 415 (5th Cir.1993). .............................................................. 17

*Schlobohm v. Schapiro*,
  784 S.W.2d 355 (Tex. 1990).............................................................. 10

*Silbaugh v. Ramirez*,
  126 S.W.3d 88 (Tex.App.—Houston [1[st] Dist.] 2002). .................... 33, 34, 36, 41

*Southern Pacific Transportation Co. v. Commercial Metals Co.*,
  456 U.S. 336, 342 102 S.Ct. 1815, 1820 (1982)..................................................... 13

*Stephen F. Austin State University v. Flynn*,
  228 S.W.3d 653 (Tex. 2007)................................................................................. 22

*Texas Mut. Ins. Co. v. Ruttiger*,
  381 S.W.3d 430 (Tex. 2012)................................................................................. 31

*U-Anchor Advertising, Inc. v. Burt*,
  553 S.W.2d 760 (Tex. 1977)................................................................................. 20

*University of Texas Medical Branch v. Blackmon*,
  195 S.W.3d 98 (Tex. 2006)................................................................................... 30

*Waterman Steamship Corp. v. Ruiz*,
  355 S.W.3d 387 (Tex. App.—Houston [1st Dist.] 2011). .................................... 10

*World Wide Volkswagon Corp. v. Woodson*,
  444 U.S. 286, 296, 100 S.Ct. 559 (1980)....................................................... 17, 21

<u>Statutes and Rules</u>                                                                            <u>Page(s)</u>

4 Wright & Miller, *FEDERAL PRACTICE & PROCEDURE* §1067.5............................ 11

Article 5568, Vernon's Texas Civil Statutes. .......................................................... 16

Tex. Bus. & Comm. Code §7.102(a)(13)................................................................. 16

Tex. Civ. Prac. & Rem. Code ("CPRC") §17.042. ................................................... 9

Texas Long-Arm Statute............................................................................................ 9, 10

Tex. R. Civ. P. 120a...................... 8, 9, 28, 30, 31, 33, 34, 35, 36, 37, 39, 40, 41, 42

Tex. R. Civ. P. 162..................................................................................................... 30

United States Constitution. ................................................................................. 10, 15

TO THE HONORABLE FIRST COURT OF APPEALS:

## STATEMENT OF THE CASE

This is an accelerated appeal from a February 23, 2015 order (CR 121) denying a special appearance by Nationwide Distribution Services, Inc. (CR 9). The lawsuit seeks damages for personal injury. (CR 18). Appellant timely filed a Notice of Appeal from the denial of its special appearance (CR 127).

## STATEMENT OF JURISDICTION

The court has jurisdiction to hear this appeal from an interlocutory order pursuant to Texas Civil Practice & Remedies Code §51.014(a)(7) because the order in question denied a special appearance.

## ISSUES PRESENTED

1.    There is no general jurisdiction over NDS because it has no continuous and systematic contacts with Texas.

2.    There is no specific jurisdiction over NDS because its "contacts" with Texas are far below the constitutional minimum

3.    NDS did not waive its special appearance by participating in merits-related discovery and filing or joining non-dispositive motions

## STATEMENT OF THE FACTS

Plaintiff Robert Jones filed this lawsuit on October 25, 2013, initially suing three "Kimberly-Clark" (hereafter: "K-C") corporate entities. (SCR 3). Jones filed a First Amended Petition on January 15, 2014 adding Nationwide Distribution Services, Inc. ("NDS") and Nationwide Express, Inc. as defendants. (SCR 9). Intervenor Poly

Trucking, Inc. ("Poly"), plaintiff's employer, filed a Second Amended Petition in Intervention adding NDS on January 24, 2014. (CR 4).

Jones ("Jones") alleges, and no one denies, that he is a Michigan resident suing a Tennessee corporation (NDS) and a Texas corporation (Poly) for an injury he suffered in Texas. (CR 19). Jones' February 2012 injury (SCR 11) occurred while he was delivering cargo as a truck driver for Poly. (SCR 201 at 35/1-25; 202 at 37/13-24). Jones does not say NDS committed a negligent act in Texas. He alleges NDS "negligently loaded and/or secured the cargo [in the trailer Jones was pulling] *at its facility in Roswell, Georgia*." (CR 19 ¶7) (emphasis added). NDS' allegedly negligent handling of cargo in Georgia is said to have caused injury in Texas because "the load fell out of a trailer" while Jones was delivering the cargo in Texas. (CR 19 ¶7).

On March 17, 2014—slightly more than a year ago—NDS filed a Special Appearance in response to the petitions of both Jones and intervenor Poly, stating that it has no activity in or contacts with Texas (CR 9). NDS attached to its Special Appearance an affidavit of its president (David Coffey), attesting that NDS is a Tennessee corporation with its principal place of business in Tennessee and no offices, property, bank accounts, contracts, agents, employees or sales in Texas. (SCR 24). Instead, NDS operates as a warehouseman in Roswell, Georgia (for co-defendant K-C), where it loaded the cargo in question. (SCR 218 at 101/12-102/12).

2

The trial court issued a docket control order on May 13, 2014 (SCR 26), setting trial for February 2, 2015 with pre-trial deadlines that included expert witness designation for defendants on November 3, 2014 and a discovery cutoff on January 2, 2015. Jones filed a Second Amended Petition on July 7, 2014, specifying for the first time the negligence being alleged against NDS. (CR 18, 19 ¶7).

Jones filed a Response to NDS's Special Appearance on February 20, 2015. (CR 66). His Response equates NDS' loading of Texas-bound cargo at a Georgia warehouse with purposeful availment by NDS of the privilege of conducting business in Texas (i.e., "minimum contacts" by NDS with Texas, justifying the exercise of personal jurisdiction consistent with due process). Jones asserted as minimum contacts that: (1) the load in question, and most loads leaving the Kimberly-Clark warehouse in Georgia, went to Texas; (2) K-C, a Delaware corporation, has its headquarters in Texas; and (3) NDS sent invoices to K-C's "accounts payable" department in Texas. (CR 72-75). Jones argues that those facts, and the foreseeability "that someone would be injured in Texas if they improperly loaded cargo bound for Texas," indicate general jurisdiction over NDS in Texas. (CR 75).

The evidence relevant to personal jurisdiction is undisputed. NDS loaded Poly's trailer with K-C's cargo at the Roswell, Georgia warehouse, after which Jones inspected the load, sealed the trailer and left for Texas. (SCR 210-213). Jones

3

delivered the load to the Ravago facility in Waller, Texas (SCR 202 at 37/20-38/23), where part of the load fell on him after he opened the trailer door. (SCR 214 at 86/10 to 216 at 94/10). There is no allegation or evidence that NDS has or has ever had any employees or operations in Texas, or that it had anything to do with unloading the trailer in Texas. Jones made the conclusory allegation that NDS "does a substantial amount of business in Texas and directs products to Texas" (CR 19 ¶5), but the affidavit attached to NDS' Special Appearance (SCR 24) and even Jones' own evidence (SCR 74 at 5/22 to 75 at 9/15) established the opposite of that allegation.

Jones deposed David Coffey, president of NDS, on February 16, 2014. (SCR 73). Mr. Coffey testified that NDS had two employees working on-site at the facility in Roswell, Georgia where it acted as warehouseman for K-C. (SCR 74 at 6/22-7/9). NDS leases its own facilities in Tennessee and North Carolina, but does not own or lease the facility where it provides warehouse services to K-C in Roswell, Georgia. (SCR 74 at 6/6-7/6). NDS provided warehouse services to K-C in Georgia pursuant to a "Blanket Warehouse Services Agreement" between the two companies. (SCR 56; 75 at 9/11-15). Mr. Coffey testified that warehousing services include unloading and storage of a client's goods, while distribution includes preparing goods for pickup and delivery by other companies. (SCR 77 at 18/11-15).

Among NDS's job responsibilities at the Georgia warehouse was loading

4

trailers bound for Ravago in Waller, Texas, which it did on 168-170 occasions. (SCR 78 at 21/9-24/16). NDS was given paperwork directing what products to load on trailers for shipment and where the products were to be shipped. (SCR 75 at 12/15 to 76 at 13/8).

The Blanket Warehouse Services Agreement between K-C and NDS make clear that NDS was merely handling goods on K-C's behalf:

> 9.01 Title: K-C shall consign the Products to itself in care of Warehouseman [i.e., NDS]. Title to such Products shall not pass to Warehouseman. All Products shall remain the property of K-C, and shall be stored and identified as K-C's property.

(SCR 61). NDS, typical of any warehouseman, was to be notified by the goods' owner of incoming shipments, and was in turn to notify the owner of their receipt and provide bills of lading for shipments leaving the warehouse. (SCR 62-63 at §10.04).

The Warehouse Services Agreement directs K-C to give any notice under the Agreement to NDS at its head office in Loudon, Tennessee, and NDS to give notice to K-C at its Roswell, Georgia location. (SCR 67 at §14.06). K-C directed that NDS send invoices to K-C's "Accounts Payable Department" in Waco, Texas. (SCR 59 at §6.02). The evidence that NDS acted as a warehouseman in Georgia, but did nothing in Texas, is uncontradicted.

In the year since its appearance, NDS has obtained and provided discovery, both jurisdictional and merits-related, and has filed non-dispositive motions relating

5

to its discovery disputes with Jones. Such filings have included a motion to quash deposition notices for jurisdictional discovery based upon scheduling conflicts, a motion to compel more complete answers by Jones to NDS' interrogatories (CR 24), and a motion to compel production by Jones of driver's logs and DVIR records. (CR 32). NDS also moved for a continuance of the expert designation deadline (CR 41), which the court granted by issuing a new docket control order. (SCR 34).

At no time did NDS ever seek dispositive or affirmative relief, such as through a motion for summary judgment, motion to dismiss, motion to strike pleadings or otherwise. At no time did NDS state or imply that in pursuing merits-related discovery, it was abandoning its concurrent challenge to the jurisdiction.

The trial court held a hearing on NDS's Special Appearance on February 23, 2015, and signed an order denying it that same day. (CR 121). Less than one year elapsed between NDS's Special Appearance and the ruling on that Special Appearance by the trial court.

#### SUMMARY OF THE ARGUMENT

Robert Jones, as plaintiff, pled and proved facts that conclusively negate both general and specific jurisdictions over NDS in Texas. Uncontroverted evidence attached to NDS's Special Appearance and Jones' response to it confirms only one, trivial "contact" by NDS with Texas (if mailing invoices to a Texas accounting

6

department even qualifies as a jurisdictional contact). Jones' argument for personal jurisdiction consists almost entirely of what courts long ago rejected: foreseeability of injury in the forum, from acts outside the forum (an "effects" or "directed injury" argument). Courts are clear: foreseeable harm in the forum is the *plaintiff's* (Jones') contact with the forum—not the defendant's. Foreseeability of harm is thus not a basis for personal jurisdiction.

Courts from the U.S. Supreme Court to this court have consistently rejected an "effects"-based standard for personal jurisdiction. The problem is that an effects-based standard focuses upon liability facts, not jurisdictionally relevant facts. Jones invited the district court to focus upon *his* relationship to the Texas forum (he was injured here), but personal jurisdiction turns upon *NDS'* relationship (or lack of one) to the forum. Whether Jones' injury in the forum was a foreseeable result of NDS' alleged breach of duty is very relevant to liability, but irrelevant to personal jurisdiction. NDS is not subject to being sued in Texas unless it committed a tortious act in Texas, or otherwise has Texas contacts out of which Jones' injury accident arose.

The closest NDS came to a contact with Texas was sending invoices to K-C, at its accounts payable department in Waco, Texas, for services performed in Georgia pursuant to those parties' Georgia contract. The party to be billed knows and designates the address to which bills should be sent. Even if NDS had entered into a

7

contract with K-C in Texas for its Georgia services, precedent is clear that would not create personal jurisdiction over NDS in Texas.

The district court had no evidence to justify its implicit finding that NDS "purposefully availed itself of the privilege of conducting business in Texas." The error goes beyond the fact that NDS performed warehouse services in Georgia, not in Texas. The district court also failed to recognize that NDS did the opposite of seeking the benefits of Texas law. Its Blanket Warehouse Services Agreement with K-C specifies that Wisconsin law governs the contract. (SCR 66; ¶14.05).

Absent personal jurisdiction over NDS, Jones must resort to a waiver argument. He equates NDS' participation in merits-related discovery and its discovery motions with a choice to abandon its challenge to personal jurisdiction. Controlling precedent rejects that argument as well, consistent with the plain meaning of Tex. R. Civ. P. 120a (outlining special appearance practice).

Jones discusses NDS' discovery motions as though they constitute a request for affirmative relief (i.e., adjudication on the merits, disposition of claims), but he never explains why that would be or cites precedent for the proposition. His false equation of discovery motions with merits adjudications dissolves on sight, as the two are obviously distinct. Jones also misconceives the meaning of waiver. It is the deliberate relinquishment of a known right. NDS's attempts to obtain merits-related discovery

8

from plaintiff, in recognition that its Special Appearance might be denied and it might have to try the lawsuit (as the trial court has ruled), has nothing to do with and cannot plausibly be construed as deliberate relinquishment of a personal jurisdiction defense.

No rule or statute requires that a specially appearing defendant conduct only jurisdictional discovery until the court rules on its special appearance. To the contrary, R. 120a is explicit and unqualified in saying that "the use of discovery processes" does not waive a special appearance. This court has held R. 120a means what it says, and merits-related discovery does not waive a special appearance. Jones' argument to the contrary cannot stand against the rule's plain meaning and controlling precedent.

### TEST FOR PERSONAL JURISDICTION; STANDARD OF REVIEW

Jones claims both types of personal jurisdiction over NDS in Texas—general and specific. Jones does not cite the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code ("CPRC") §17.042, which states that personal jurisdiction exists over a defendant "doing business" in Texas. It gives, as examples, that the non-resident:

1.      Contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

2.      Commits a tort in whole or in part in this state; or

3.      Recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Jones does not allege (in his pleadings) or claim (in his Response to NDS's Special

Appearance) that any of those three examples exists here.

The Texas Long-Arm Statute is construed as allowing assertion of personal jurisdiction to the limits of the United States Constitution, so it is constrained only by precedent construing the "due process" guarantee of the U.S. Constitution. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990); *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 403 (Tex. App.—Houston [1ˢᵗ Dist.] 2011).

The United States Supreme Court indicates that the "touchstone" of personal jurisdiction consistent with the U.S. Constitution is a showing that the defendant purposefully established "minimum contacts" in the forum state—i.e., that defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183 (1985). The second part of the due process test is whether the assertion of personal jurisdiction over the non-resident defendant, even with minimum contacts, comports with "fair play and substantial justice." *Id*. at 476, 2184. The second part of the test is not at issue here, as NDS has no minimum contacts with Texas that could put "fair play" in issue.

General jurisdiction requires more than specific jurisdiction—the defendant's contacts with the forum state must be "continuous and systematic," not just "minimum." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 416, 104

10

S.Ct. 1868, 1873 (1984). The Texas Supreme Court has said that while the U.S. Supreme Court "has given little guidance on the appropriate injury for general jurisdiction," its opinion in *Helicopteros* "suggests that the requisite level of contacts is fairly substantial." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 167 (Tex. 2007). Thus, general jurisdiction requires a "more demanding minimum contacts analysis" than does specific jurisdiction, and has a "substantially higher" threshold." *Id*. at 168.

Leading scholars see general jurisdiction the same way: "The defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general *in personam* jurisdiction." *Id*. at 168, quoting 4 Wright & Miller, *FEDERAL PRACTICE & PROCEDURE* §1067.5.

This court's standard of review of the district court's denial of NDS's Special Appearance is *de novo* because no facts are in issue, and whether the facts meet the jurisdictional threshold is a matter of law for the court. *BMC Software Belguim, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Facts necessary to support the district court's decision, and consistent with the evidence, are implied. However, because the clerk's record and reporter's record are before the court, those implied findings are not conclusive and may be challenged in this court for factual and legal sufficiency. *Id*.

11

at 795. There are no fact issues in this appeal, so no factual insufficiency challenge, but this court "may review the trial court's legal conclusions drawing from the facts to determine their correctness." *Id*. at 794.

## ARGUMENT

**I.** **There is no general jurisdiction over NDS because it has no continuous and systematic contacts with Texas**

NDS notes the *absence* in the record of factual allegations or evidence of "continuous and systematic contacts" of NDS with Texas. Jones' Response asserts they are "certainly" present (CR 74), but Jones discusses his own and K-C's contacts with Texas as if they constitute contacts of NDS. Jones' Response to Special Appearance argues for personal jurisdiction over NDS because *K-C* (1) has its headquarters here; (2) required NDS to mail invoices to K-C's "Accounts Payable" office in Waco; and (3) regularly sends cargoes of scrap metal from the Georgia warehouse managed by NDS to Texas. (CR 75).

It is a fundamental rule of personal jurisdiction that "only the defendant's contacts with the forum are relevant, and not the unilateral activity of another party or a third person." *Moncrief Boil International, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013). So K-C's headquarters location in Texas and Jones' injury location in Texas, however significant for those parties, are not contacts of NDS with Texas. Likewise, K-C's decision to ship its goods to Texas from the Georgia

12

warehouse where NDS stored them, and Jones' choice to make the haul for Poly (motor carrier for K-C), are acts of other parties.

Such Texas contacts by other parties are not evidence that *NDS* purposefully availed itself of the privilege of conducting business in Texas. For example, NDS "filled out a bill of lading" when K-C directed that a load of its goods be shipped to Ravago, a Texas purchaser. (CR 78 at 22/1-12). NDS, a warehouseman, can at most have acted as K-C's agent in filling out shipment paperwork because only K-C owned and had the right to release the goods for shipment to a purchaser. There is no evidence of any bill of lading saying *NDS* is shipping goods into Texas. There could not be, as a bill of lading is a contract and chain of title document between the goods' owner (the shipper/consignor, K-C) and the motor carrier the owner hires (Poly) to carry the cargo to the consignee/purchaser (Ravago).

A bill of lading is not made with or by a warehouseman. Precedent is clear: "The bill of lading is the *basic transportation contract between the shipper-consignor and the carrier*; its terms and conditions bind the shipper and all connecting carriers." *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 102 S.Ct. 1815, 1820 (1982) (emphasis added); *Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F.3d 58 (5ᵗʰ Cir. 1992) (bill of lading is "the contract of carriage between the shipper and the carrier").

There is no claim or evidence that NDS owned the goods K-C was selling and shipping to Ravago in Waller, Texas from the Georgia warehouse managed by NDS. That is consistent with NDS' role as warehouseman, not a consignor/shipper of K-C's goods. It is undisputed that when NDS released and loaded K-C's goods for delivery by Poly to Ravago in Texas, it acted as directed by owner/consignor K-C. There is no allegation or evidence that NDS had any right to do (or did do) anything beyond what K-C directed with the goods K-C entrusted to its care. There is no claim or evidence that NDS profited from K-C selling goods in Texas or Poly transporting cargo there.

A. **NDS' Georgia contract to manage a Georgia warehouse for a Texas company with national operations is not a "contact" with Texas**

First, it does not matter how deeply K-C is connected to Texas. Like any multinational corporation doing business worldwide, it has a physical presence in, and enters into contracts and performs operations in, jurisdictions outside Texas. Here, as will often be the case, the local (foreign) business with which K-C made a contract has no contacts with Texas, and performed operations for the Texas company in the foreign jurisdiction rather than in Texas. If a Texas entity's Texas contacts are imputed to every foreign entity with which it contracts for services that are performed in a foreign jurisdiction, constitutional limits will be an illusion. Having shrunk its welcome mat as "the world's forum of final resort," *In re Doe*, 443 S.W.3d 603, 611 (Tex. 2014), Texas surely does not intend to violate U.S. constitutional limitations on

14

the even more important issue of personal jurisdiction.

Even if such jurisdictional gusto were compatible with due process under the U.S. Constitution (which it plainly is not), it would add volume to Texas courts at the expense of taxpayers, mostly for the benefit of lawyers. Jones has a legitimate jurisdictional basis to sue Poly and K-C in Texas for his Texas injury because they do business in Texas. If he wanted to sue NDS in the same lawsuit, he needed to file it in Georgia (or Tennessee), where he presumably could find counsel as readily as he found Texas counsel. The benefits of suing in Texas, however large and personal, should not be confused with a basis for jurisdiction in Texas.

Instead, the focus of personal jurisdiction is upon the foreign entity's (NDS') contacts with Texas. The Statement of Facts shows NDS has no office, employees, money, presence of any kind or contacts in Texas. Jones does not allege or prove facts suggesting it does. Instead, Jones argues for what amounts to jurisdiction-by-association. That novel doctrine has even less merit and support in precedent than does guilt-by-association. No federal or Texas court has recognized one contracting party's Texas contacts as a basis for personal jurisdiction over its counter–party.

Second, NDS cargo loading in Georgia does not become an NDS contact with Texas just because K-C directs that its goods (the cargo) be shipped to Texas. NDS fulfilled its responsibilities as a Georgia warehouseman by loading the cargo stored

in the Georgia warehouse and generating the paperwork required for its shipment and delivery. Traditionally, per Article 5568, Vernon's Texas Civil Statutes:

> Any person, firm, company or corporation who shall receive, * * *, or any kind of * * * merchandise, or any personal property in store for hire, shall be deemed and taken to be public warehousemen.

*Luther Transfer & Storage v. Walton, Inc.*, 296 S.W.2d 750, 752 (Tex. 1956).

Texas' current version of the Uniform Commercial Code simply uses the term "warehouse" to refer to "a person engaged in the business of storing goods for hire" (i.e., a commercial bailee). Tex. Bus. & Comm. Code §7.102(a)(13). Such storage of K-C's goods for hire occurred only in Georgia. NDS releasing the bailor's goods to K-C's chosen motor carrier (Poly), for delivery to K-C's chosen destination, links K-C and Poly—not NDS—to Texas.

Jones' real point, at the bottom of the paragraph in which he argues for general jurisdiction, is that NDS knew K-C's loads "were bound for Texas" and it was foreseeable to NDS "that someone would be injured in Texas if they improperly loaded cargo bound for Texas." (Response, p. 10). Leave aside for a moment that U.S. and Texas courts reject foreseeability of injury in the forum as a basis for personal jurisdiction over a defendant that lacks minimum contacts in the forum (discussed in part II.B. below). Even if foreseeability of harm in Texas from Georgia warehouse operations were in itself a contact, it would be far short of the "continuous and

16

systematic" contacts with Texas required for general jurisdiction.

Jones seems to equate product distribution (which routinely supports personal jurisdiction in multiple forums) with provision of services (which supports jurisdiction only in the place of performance). Minimum contacts may exist for products liability defendants with states where they knows or can foresee their products will be distributed. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298 (1980); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir.1993). Personal jurisdiction is justified when a product manufacturer or distributor seeks the financial benefits of selling its products in other states. *Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 470 (5th Cir.2006).

No such jurisdictional rationale can apply to services (work). By its nature, work is performed in a given location. Work is not a tangible object that can be distributed to another state. Once NDS loaded the cargo in Georgia in its role as K-C's warehouseman, everything else that happened with the cargo was done by Poly as motor carrier and K-C as owner. Here, unlike multi-state product distribution, there is no claim or evidence that NDS derived any benefit from Poly's transport of goods to Texas or K-C's use or sale of its goods in Texas. NDS sought and obtained benefit in Georgia from work it did in Georgia.

**B.** **That Kimberly Clark has its headquarters and accounting department in Texas, and so NDS sent bills to Texas, is no basis for personal jurisdiction**

Because foreseeability of injury in Texas from cargo loading in Georgia is not a Texas jurisdictional contact for the Georgia warehouse (see part II.B.), Jones must find significance in K-C's Texas location and instruction to send invoices to it at its "Accounts Receivable" department in Waco. Precedent rejects each of those as a basis for personal jurisdiction, as neither is a "contact" indicating a defendant purposefully availed itself of the privilege of conducting activities in the forum.

A strong sign Jones (and thus the trial court) is wrong on this point is that he disagrees with the U.S. Supreme Court. The high court rejects the idea that contracting with and payment to a forum state resident constitutes minimum contacts that satisfy personal jurisdiction: "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King v. Rudzewiscz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185 (1985).

The Fifth Circuit, consistent with *Burger King\*, likewise rejects Jones' equation of contracts and billing with personal jurisdiction. That court has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a

contract between the non-resident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the non-resident defendant." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

That K-C is a Delaware corporation with its headquarters in Texas is therefore no support for asserting personal jurisdiction in Texas over a Tennessee corporation performing services (loading and unloading; storage) for K-C at a Georgia warehouse. That the foreign entity (NDS) sent bills for its Georgia services to a Texas address designated by the Texas contracting party is even farther from turning the Georgia services into a Texas "contact" for jurisdictional analysis. The Texas billing address designated by K-C is not a "contact" for personal jurisdiction analysis, or is so attenuated as to be meaningless.

K-C, not NDS, determines where bills or payments to it should go. Such unilateral activity by a Texas resident, as the U.S. Supreme Court said in analogous circumstances, is "not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. 417, 104 S.Ct. 1873. The court there was discussing the Colombian defendant's acceptance of checks drawn on a Texas bank, but invoices going to Texas are no closer to being "contacts."

19

The Texas Supreme Court also disagrees with Jones that payments to Texas support personal jurisdiction. *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977) explained that a contract requiring an out-of-state defendant to pay a Texas business at its office in Amarillo was a minimal and fortuitous contact, not an indication that the defendant purposefully conducted activities within Texas. As the court explained, the parties entered into an Oklahoma contract to be performed in Oklahoma. The Oklahoma defendant did nothing to support an inference that it sought the privilege of doing business in Texas, considering that his only Texas "contact" was sending checks to the address of the Texas contracting party. The court held that due process did not allow personal jurisdiction on those very analogous facts.

The Texas Supreme Court has rejected a much stronger case for personal jurisdiction than Jones presents. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005) considered a lawsuit based upon an actual contact with Texas—a product sale to a Texas resident. He looked up a recreational vehicle seller (retail) seller in Indiana that did not do business in Texas. The only Texas contacts for the Indiana entity were a phone call with the Texas purchaser, and arrangements for shipping the RV to Texas. The court held that alleged misrepresentations in the phone call and shipping of the vehicle did not create personal jurisdiction over the seller:

> Delivery in Texas was at Holten's sole request and sole expense. If a
> seller of chattels is subject to suit wherever a customer requests delivery,

20

> then the chattel has become its agent for service of process—a conclusion the United States Supreme Court has expressly rejected. [citing *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559 (1980)].

*Michiana*, 168 S.W.3d 788.

The product sale in *Michiana* resulted from the Texas resident purposefully availing himself of the inventory and pricing offered by the retailer in Indiana—not the Indiana business reaching out to Texas as a potential market. *Id*. at 784, 786. Here Jones has even less to work with in trying to justify personal jurisdiction. NDS did not sell a product or deliver anyone's goods (much less its own) to the forum. K-C already owned the goods, and Poly (K-C's contracted motor carrier) delivered them. Nor did NDS provide services in the forum. All NDS did was (a) load a forum resident's goods (b) onto Poly's tractor-trailer (c) in Georgia (d) pursuant to a contract to perform services in Georgia. That connects NDS to Georgia, not Texas.

This court has followed the U.S. Supreme Court and Texas Supreme Court in holding that financial or administrative paperwork passing to or from Texas is not a contact supporting personal jurisdiction. *Polycomp Administrative Services, Inc. v. Jackson*, 2010 WL 1611760 (Tex. App.—Houston [1ˢᵗ Dist.] 2010) (memorandum opinion) explained that account statements sent to Texas were "a mere incident of Polycomp's custodial role," and that Polycomp performed its services in California.

The district court did not have the power to controvert all that controlling

21

precedent, as required to deny NDS' Special Appearance. The facts are not disputed, so whether they support personal jurisdiction is a matter of law, reviewed *de novo*.

## II. There is no specific jurisdiction over NDS because its "contacts" with Texas are far below the constitutional minimum

Jones correctly cites controlling precedent that specific jurisdiction exists if the defendant's "alleged liability arises out of or is related to an activity conducted within the forum." *Moki Mac Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007) (CR 71). However, Jones does not even allege—much less prove—facts indicating that NDS conducted any activity in Texas and that his injury arises out of that Texas activity.[1] Jones' identification of NDS in the "Parties" section of the Second Amended Petition includes the conclusory assertion that NDS "does a substantial amount of business in Texas and directs products to Texas." (CR 19). The pleading never alleges any specific factual basis for that conclusory statement, and is nowhere near saying that NDS committed a tort in Texas.

Conclusory statements in pleadings have been given no effect in analogous circumstances. *Stephen F. Austin State University v. Flynn*, 228 S.W.3d 653, 659 (Tex. 2007) (conclusory allegations of gross negligence not sufficient to plead within

---

[1] It appears Jones was (as he still does) simply characterizing, as *NDS'* Texas "business," the loading of and provision of bills of lading for the K-C cargo that Poly transported from the Geogia warehouse to Texas. In any event, NDS thoroughly controverted that allegation with the Affidavit of its president (SCR 23-24), proving that NDS did no business in and had no contacts with Texas.

Recreational Use statute).

**A.     Jones did not even allege that NDS committed a tort or took any action *in* Texas, as required for specific jurisdiction**

The Texas Supreme Court holds that "specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state." *Moncrief Oil International, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). In considering whether a foreign defendant purposefully availed itself of the privilege of conducting business in Texas, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Id*. at 151. The context "must be purposeful rather than random, fortuitous or attenuated," and "the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction." *Id*. at 151.

Minimum contacts are not enough for specific jurisdiction. The Texas Supreme Court explains that "for a non-resident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d 585. That required causation would be missing here, even if the contacts existed.

**(1)     Jones alleged and the evidence shows that NDS loaded the cargo in Georgia, pursuant to its duties there as a warehouseman**

When K-C and NDS negotiated their Blanket Warehouse Services Agreement,

23

they had Georgia on their minds. Notices to K-C under the Agreement were to be sent to it at its address in Roswell, Georgia. (SCR 67 at §14.06). It is undisputed that NDS handled goods in the warehouse in Roswell, Georgia on behalf of K-C. The deposition of NDS' president establishes that NDS performed its warehouseman services through two on-site employees. (SCR 74 at 6/22-7/9). Jones alleged, and it is undisputed, that NDS "loaded and/or secured the cargo" in question at the Roswell, Georgia warehouse. (CR 19).

Jones and the trial court mistakenly based personal jurisdiction over NDS upon a Texas effect of NDS' alleged negligent act in Geogia. For specific jurisdiction, only alleged negligence by NDS in Texas would have been relevant.

### (2) The Kimberly Clark-NDS contract for warehouseman services in Georgia states that it is governed by Wisconsin law

To the extent that K-C and NDS did not have Georgia on their minds, they were thinking about Wisconsin. Section 14.5 of the Blanket Warehouse Services Agreement states: "Governing Law: This Agreement shall be construed and performed according to the laws of the state of Wisconsin." (SCR 66 at §14.05). Even a choice of law provision directing application of the law of the *forum* does not in itself establish personal jurisdiction. *Burger King*, 471 U.S. 462, 105 S.Ct. 2187. This court in *Polycomp*, 2010 WL 1611760 at p. 6, and the Texas Supreme Court in *Michiana*, 168 S.W.3d at 792, have treated choice of the law of a foreign jurisdiction

24

as some indication that the foreign defendant did not intend to subject itself to Texas jurisdiction or purposefully invoke the benefits and protections of Texas law.

### (3) Absent alleged contacts by NDS with Texas, NDS' Special Appearance had to be sustained because it is a foreign citizen

Texas law is clear about the effects of failing to allege or prove facts that support personal jurisdiction—a special appearance must be sustained.

*v. General Interior Construction, Inc.*, 301 S.W.3d 653, 659 (Tex. 2010) explains:

> The defendant can negate jurisdiction on either a factual or legal basis. . . Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts.

That is exactly the situation here, where Jones clearly pled tortious conduct by NDS in Georgia and no specific actions by NDS in Texas, unless sending invoices to the Kimberly Clark accounting department in Waco is though to be a "contact."

The Texas Supreme Court explained in *Kelly that* "GIC failed to plead facts within the reach of the Long Arm Statute because it did not allege the Officers committed any tortious acts in Texas." *Id*. at 659. The same is true here, where Jones pled a tortious act in Georgia; only its *effects* were in Texas. That result, as in *Kelly*, is that NDS as the non-resident defendant "could, and did, meet [its] burden to negate all bases of jurisdiction by proving that [it does] not live in Texas." *Id*. at 660. A plaintiff such as Jones can still present evidence controverting a Special Appearance.

25

Jones tried, but his evidence instead supports NDS' challenge to personal jurisdiction.

What was true in *Kelly* is true here: the plaintiff's rebuttal evidence was "as silent as its pleadings regarding the Officers' Texas contacts related to its claims," such that "the Officers' special appearance should have been granted." *Id.* at 660. Here, too, Jones does not attempt and could never succeed in showing that NDS' purported Texas "contacts" (a contract with a Texas corporation in another state to perform services in that state, and bills sent to a Texas address) are substantially related to the operative facts in this lawsuit (alleged loading error in Georgia that made the cargo dangerous to unload in Texas). Jones presumes that harm in Texas from loading in Georgia is a jurisdictional contact for the Georgia services provider with Texas. As shown below, he never explains or cites precedent for that conclusion. He cannot, as courts universally reject such an "effects" or "directed tort" test.

**B.    Effects within the forum from the act of a party operating entirely outside the forum do not support specific jurisdiction**

Jones hangs his argument for personal jurisdiction on a peg that cannot support it, for reasons the Texas Supreme Court explained in *Michiana*. Jones argues the "effects" test, which has also been described as declaring jurisdiction where the defendant "directed a tort." *Michiana*, 168 S.W.3d 790. Citing the U.S. Supreme Court decision in *Helicopteros Nacionales*, the Texas Supreme Court explains that effects or "directed a tort" argument impermissibly "shifts" a court's focus from the

'relationship among the *defendant*, the forum and the litigation' to the relationship among the "*plaintiff*, the forum . . . and the litigation." *Id*. at 790. *See also National Industrial Sand v. Gibson*, 897 S.W.2d 769, 795 (Tex. 1995)

Such an argument for personal jurisdiction is mistaken because "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant," while an argument for "directed-a-tort jurisdiction confuses the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits." *Id*. at 790. Jones' Response to the Special Appearance is a bold (and so far successful) effort to conflate the foreseeability of harm in Texas (relevant to his tort claim) with minimum contacts by NDS with Texas (essential to his jurisdictional claim).

Jones is correct that improper loading in one state can foreseeably cause harm in another state where the cargo is unloaded (whether that is true here is a non-issue, beyond the record). However, Jones is wrong that foreseeability of injury in Texas from cargo loading in Georgia means that the foreign defendant loading cargo in Georgia has purposefully availed itself of the privilege of conducting business in (has minimum contacts with) Texas. Far from establishing personal jurisdiction over NDS in Texas, Jones' allegations and proof of NDS' Georgia-only operations negates it.

## III. NDS did not waive its Special Appearance by participating in merits-relatd discovery and filing or joining non-dispositive motions

Apparently realizing the deficiencies in his personal jurisdiction claim, Jones

27

began his Response to the Special Appearance by asking the trial court to find waiver of the Special Appearance in routine discovery requests and motions. Absent findings of fact and conclusions of law, the trial court is presumed to have done so. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). The trial court erred because the discovery actions of NDS as a matter of law do not constitute waiver of its Special Appearance. Texas Rule of Civil Procedure 120a states:

> The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. . . . Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard.

NDS' only "plea" was its Special Appearance. It did not submit any part of its pleading (answer) to be "heard and determined" before a Special Appearance ruling.

## A. Participating even in merits discovery does not deliberately relinquish a challenge to personal jurisdiction

Nothing in the discovery efforts and proceedings in this lawsuit indicates or supports an inference that NDS waived its challenge to personal jurisdiction. Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). There is no evidence that NDS intentionally relinquished its challenge to personal jurisdiction over it in Texas. The only argument left to Jones is that NDS' pursuit of

28

merits-related discovery is inconsistent with a challenge to the jurisdiction, and must be construed as waiver.

Jones comes nowhere near showing that merits-related discovery proceedings are "inconsistent with" simultaneously asserting a special appearance—i.e., that no defendant would rationally or ordinarily do both at the same time. The Texas Supreme Court makes clear that "for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Id*. at 156. Defendants routinely engage in merits discovery while asserting special appearances, for reasons explained in part III.B. below. Merits discovery is a contingency—preparation of defenses in recognition that the trial court may declare personal jurisdiction. "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with intent to rely upon such a right." *Id*. at 156. NDS never abandoned its Special Appearance; it just did not count upon the trial court granting it. Events have vindicated its caution.

Jones asserts, as evidence of waiver of the Special Appearance, four motions filed or joined by NDS regarding discovery:

1. A motion to quash notices of the depositions of witnesses Wayne Carroll and Steve Wade based upon a scheduling conflict;

2. A motion to compel more complete answers by Jones to Interrogatories;

29

3.     A motion to compel production of driver's logs and DVIR records by Jones; and

4.     A motion for continuance of the expert designation deadline.

(Response to Special Appearance, pp. 4-6).

There is no dispute that the last three motions involved merits-related issues. Jones, however, fixates upon "affirmative relief" or the "merits" of the lawsuit to the point of missing the obvious distinction between merits-related discovery and relief on the merits. NDS' discovery motions sought information, whereas "[a] claim for affirmative relief must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or relief." *University of Texas Medical Branch v. Blackmon*, 195 S.W.3d 98 (Tex. 2006) (construing Tex. R. Civ. P. 162). Plain meaning, precedent and common experience in defending lawsuits show that merits-related discovery motions are nothing like requests for affirmative relief, and as such cannot be considered a waiver of a personal jurisdiction defense.

First, Rule 120a (quoted above) explicitly declares that depositions and "the use of discovery processes" is *not* a waiver of a special appearance. The rule does not limit that statement to jurisdictional discovery. Instead, Rule 120a declares only two timing requirements for a special appearance: (1) it must be *filed* prior to any other pleading or motion; and (2) it must be "heard and determined before . . . any other plea or pleading may be heard."

30

It is undisputed or clearly established that NDS complied with both the due order of filing and the due order of hearing requirements. It did not present any "plea or pleading" for ruling prior to its Special Appearance. A motion to compel discovery or for continuance of discovery deadlines is universally understood to be distinct from a "plea or pleading." The former seek action by the court, typically (and in this case) regarding procedural disputes, while the latter seek affirmative relief or other adjudication on the merits.

The Texas Supreme Court, drafter of the Texas Rules of Civil Procedure, knew the difference between a motion and a "plea or pleading," as shown by its several and distinct references to such filings in Rule 120a. By its own standards for statutory construction, the supreme court must be assumed to have intended to limit the due order of hearing requirement to any "plea or pleading" other than the special appearance, not including motions. The Texas Supreme Court "presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). That is no less true of rules promulgated by the court under authority from the Legislature, which have the status of law. *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001).

Consistent with R. 120a, the supreme court has never said that merits-related

31

discovery or motions regarding it waive a special appearance. The supreme court first addressed the issue of waiver-by-motion in *Dawson-Austin v. Austin*, 968 S.W.2d 319 (Tex. 1998), in which a specially appearing defendant also filed a motion to quash service of citation and a plea in abatement. She also later filed a motion for continuance of a hearing set by her opponent on her filings other than the special appearance. The supreme court rejected the then-held view of some appellate courts that a filing not expressly made "subject to" a special appearance was a waiver of the special appearance.

*Dawson-Austin* is cited today regarding waiver because the court added, in *dicta*, that the specially appearing defendant was "entitled to ask for more time for discovery on her motion to quash, provided she did not attempt to take that discovery before the special appearance was decided." *Id.* at 323. That is *dictum* rather than a holding because only jurisdictional discovery was at issue. The court had no need to address, and did not address, whether seeking non-jurisdictional discovery prior to a ruling on the special appearance is a waiver of the special appearance.

Three years later, this court rejected an argument that a motion to quash "certain [unspecified] discovery" waived defendants' special appearances. *Anderson v. Bechtle*, 2001 WL 930205, p. 2 (Tex. App.—Houston [1st Dist.] 2001) (unpublished). This court noted: "All requests for affirmative relief do not waive a special

32

appearance," and "Waiver occurs only if the relief requested is inconsistent with the defendant's assertion that the district court lacked jurisdiction." *Id.* at p. 2.

This court was still more explicit on the issue two years later, in *Silbaugh v. Ramirez*, 126 S.W.3d 88 (Tex.App.—Houston [1st Dist.] 2002). There the court held that merits-related discovery and motions regarding it did not waive a defendant's special appearance. The court noted that "the Texas Supreme Court, in *dicta*, interpreted Rule 120a as limiting discovery to facts relevant to the special appearance" (i.e., in *Dawson-Austin*). *Id.* at 93. However, this court said it had "previously declined to follow the *dicta* in *Dawson-Austin*, and instead followed the plain language of the statute," *Id.* at 93, referring to *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 801 (Tex. App.—Houston [1st Dist.] 2000). The court held in *Silbaugh* that the defendant's motions regarding discovery "were part of the discovery process and did not waive her special appearance." 126 S.W.3d 93. The court's conclusion flowed from its recognition that Rule 120a "does not limit discovery to only those issues that are related to the special appearance." *Id.* at 93.

The supreme court again considered the waiver issue in *Exito Electronics Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004). There the court of appeals had ruled that a defendant waived its special appearance by (among other things) "participating in the trial court's resolution of discovery matters before the trial court ruled on the

33

special appearance." *Trejo* offers no guidance here because the motions pertained only to jurisdictional discovery, and the court did not consider the effect of merits-related discovery. The court made that clear: "We therefore express no opinion on the effect of parties' participation in discovery that is unrelated to the special appearance before its resolution." *Id.* at 307, n.24. Thus, it is this court's opinions that control the issue.

This court again addressed merits-related discovery and motions regarding it in *Forest River, Inc. v. Quality Frames, Inc.*, 2005 WL 615424 (Tex. App.—Houston [1st Dist.] 2005) (memorandum opinion). The court held that pursuit of a motion to quash an expert deposition does not waive a special appearance. The opinion explains that *Trejo* is not to the contrary because the supreme court expressly declined to address whether merits discovery has an effect upon a yet-to-be presented special appearance. This courts followed its holding in *Silbaugh*, concluding that the plain meaning of Rule 120a does not limit discovery to jurisdictional issues.

*First Oil, PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767 (Tex. App. —Houston [1st Dist.] 2008) rejected a waiver argument based upon pursuit of motions regarding jurisdictional discovery. It, like *Dawson-Austin*, does not address the issue here.

Most recent of the relevant opinions is *In Re Stern*, 321 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2010). The opinion resolved a distinct issue: whether a plaintiff has a *right to take* non-jurisdictional discovery against a specially appearing

34

defendant. It does not. The court held in *Stern* that the trial court abused its discretion in ordering that the specially appearing defendant must produce his computer hard drive for forensic examination in a defamation lawsuit, prior to a hearing on his special appearance. The appeal did not present a waiver issue, yet the court had to apply precedent that mentions waiver. In doing so it appropriately distinguished a right to discovery on a special appearance from the waiver of one.

*Stern* concluded that Rule 120a(3) authorizes discovery prior to a special appearance only regarding facts essential to justify opposition to the special appearance, and does not authorize postponing the special appearance hearing in order to allow discovery "that is unnecessary or irrelevant to the establishment of jurisdictional facts." *Id*. at 839-40. *Stern* is significant for its discussion of the supreme court's opinion in *Trejo,* and especially for distinguishing the issues of (1) whether there is a *right to take* merits-related discovery from a specially appearing defendant prior to a hearing on jurisdiction; and (2) whether a specially appearing defendant *waives* its jurisdictional challenge if it takes merits-related discovery before a hearing.

*Stern* correctly refers to *Trejo* as having "pointedly expressed 'no opinion on the effect of parties' participation in discovery that is unrelated to the special appearance before its resolution.'" 321 S.W.2d 839. This court did not treat its ruling in *Stern* against hard drive discovery as a rejection of or inconsistent with its ruling

against waiver in *Forest River* and *Silbaugh*. Instead, the court said rulings that pursuit of merits-related discovery is not waiver of a special appearance "are limited to those situations in which the issue is whether a defendant waives a special appearance by participating in discovery," and do not apply to the issue (as in *Stern*) whether a discovery ruling is an abuse of discretion in light of a special appearance. *Id*. at 840. The result of all this precedent is simple. This court has never held that merits-related discovery waives a special appearance—only that it does not.

That is not a lonely position. The other Houston appellate court agrees that merits-related discovery and motions regarding it do not waive a special appearance. *Horowitz v. Berger*, 377 S.W.3d 115, 124 (Tex. App.—Houston [14th Dist.] 2012). As *Horowitz* explains, "Interrogatories and requests for admission are not pleas, pleadings or motions." *Id*. at 124. The supreme court explained in *Trejo* that "pleadings" consists of petitions and answers, while a "motion" is an "application requesting a court to make a specified rule or order." 142 S.W.3d 305, n.11. The court's distinction between a motion and a pleading is consistent with it having drafted Rule 120a to require that a special appearance "be heard and determined" before "any other plea or pleading may be heard," but without not before any motion may be heard.

The Fourteenth Court explains the state of precedent as follows:

> The two Houston-based courts of appeals have held that a defendant's participation in merits discovery without having any motions regarding

36

that discovery heard before the special appearance does not constitute a general appearance waiving that defendant's special appearance."

*Lisitsa v. Flit*, 419 S.W.3d 672, 678 (Tex. App.—Houston [14th Dist.] 2013).

Presenting discovery motions likewise is not waiver. To be waiver, a discovery motion would have to violate the "due order of hearing" requirement. It cannot, because R. 120a's due order of hearing pertains only to "a motion to transfer venue or any other plea or pleading." *See also Gutierrez v. Cayman Islands firm of Deloitte & Touche*, 100 S.W.3d 261, 267 (Tex.App.—San Antonio 2002) (petition for writ of mandamus, to overturn an order compelling non-jurisdictional discovery, did not waive petitioner's special appearance because the petition was not a "pleading," and "Rule 120a specifies that the use of discovery processes does not constitute waiver").

Lawyers expect and find careful draftsmanship of rules by the Texas Supreme Court, especially after scrutiny by the Bar and thorough review by committees. It is inconceivable that the supreme court meant to include discovery motions in Rule 120a's due order of hearing requirement, yet somehow forgot to say so, or equated a motion with a "plea or pleading" when its own precedent clearly distinguishes them.

**B.    Merits-related motions for discovery and continuance may be important to defending a lawsuit if a special appearance is denied**

Jones and the district court are wrong about waiver for reasons going beyond plain meaning and precedent. Defense counsel do not have the luxury of ignoring

practical considerations, such as making sure they can defend a lawsuit on the merits if a special appearance is denied and pre-trial discovery deadlines are not thereafter reset. The hard-won wisdom of experience teaches trial lawyers that it is very risky to limit their discovery to jurisdictional facts in support of a special appearance. The risk begins with the prevalence of docket control deadlines for discovery and early trial settings. It then grows with the typical delay in obtaining, providing and making admissible the jurisdictional discovery needed before all parties will agree to or the court will order a hearing on a special appearance. It continues with the uncertainty of the district court's ruling on a special appearance. Merits-related discovery is a contingency against limited preparation time following denial of a special appearance.

Defense lawyers function in a litigation environment in which pretrial discovery deadlines are rarely if ever bifurcated based upon a defendant having filed a special appearance. *See, e.g., In re: Alford Chevrolet-Geo*, 997 S.W.2d 173 (Tex. 1999) (bifurcated discovery rejected even for class action certification, noting intertwining of that issue with merits). Here the district court did not issue an initial set of deadlines for jurisdictional discovery, to be followed (after special appearance rulings) by a second set of deadlines for merits-related discovery.

A defense lawyer does not have the luxury of assuming, on behalf of a client whose fate depends upon him, that it is permissible or desirable to ignore pretrial

discovery deadlines that apply to his client without limitation to jurisdictional discovery. If he does, his client will be at the mercy of the court in obtaining merits discovery via a new docket control order. He cannot just assume the trial court will extend discovery deadlines if little or no time remains for discovery after a special appearance is adjudicated. Some relief from deadlines might be expected if a specially appearing defendant foregoes merits discovery pending a ruling on jurisdiction, but like any discretionary ruling it is not assured. Even if the court allows more time, a defendant that has foregone merits discovery and whose special appearance is denied will be less prepared than other parties who have conducted merits discovery. Lawyers also know that witnesses may move, disappear, change jobs (loyalties) and even die in the months or even years that may pass before a special appearance is ruled upon.

Competent and experienced defense counsel therefore hope for the best and prepare for the worst by routinely taking merits-related discovery within the court-ordered discovery deadlines, while pursuing in parallel their clients' special appearances. Counsel reading R.120a see that it explicitly allows discovery without restricting it to jurisdictional facts, and sets a due order of hearing requirement only for motions to transfer venue and a "plea or pleading." If trial counsel look, they will find precedent from both Houston appellate courts stating that engaging in merits-related discovery (including motions) prior to a ruling on a special appearance is *not*

a waiver of that special appearance. The practical considerations often leave trial counsel with a strong motive to engage in merits discovery if no one is objecting to it, and cost is the only downside of participating in it.

Merits discovery, in the face of such litigation imperatives and uncertainties, is thus prudence rather than waiver. There is nothing about merits discovery, or motions pertaining to it, that constitutes or signals abandonment of a challenge to personal jurisdiction. There are two red-lines that cannot be crossed without waiver: (1) due order of filing; and (2) due order of hearing. NDS did not cross either one.

Jones attempted to add delay as a waiver argument, but he has no basis to do so. Less than a year passed between NDS' special appearance (March 17, 2014) and the hearing on it (February 23, 2015). R. 120a does not include a deadline or delay provision, and special appearances are often decided more than one year after the defendant's appearance. *See American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801 (Tex. 2002) (3 year delay). This court and others have rejected delay-based waiver claims as a matter of law, absent any hearing deadline in R. 120a. *Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, 2006 WL 1030185, p.4 (Tex.App. —Ft. Worth 2006) (unpublished) (18 months); *Robertson v. Hensel Phelps Construction Co.*, 1999 WL 233599, p. 1 (Tex.App.—Houston [1st Dist.] 1999) (one year); *Horizon Shipbuilding, Inc. v. Blyn II, Holding, LLC*, 324

40

S.W.3d 840, 846 (Tex.App.—Houston [14th Dist.] 2010) (one year).

Because Texas courts lack a constitutional basis for personal jurisdiction over NDS, the district court's ruling cannot stand unless merits-related discovery is treated as waiver. Doing so would require re-writing various controlling texts, as follows:

1. Add words to Rule 120a(1): "the use of discovery processes shall not constitute a waiver of such special appearance [*if limited to jurisdictional facts*];"

2. Add words to Rule 120a(2): "Any motion to challenge the jurisdiction shall be heard and determined before a motion to transfer venue or any other plea or pleading [*or motion*] may be heard;"

3. Re-write the supreme court's opinion in *Trejo* so that it implies rather than disavows a ruling about the effect of non-jurisdictional discovery prior to a hearing on a special appearance; and

4. Re-write the no-waiver opinions of this court (*Anderson, Forest River* and *Silbaugh*) in order to treat merits discovery and related motions as waiving a special appearance.

Some of those re-writes are beyond the court's power. There is no reason for re-writes within this court's power (*en banc* reconsideration of panel precedent) when its opinions on jurisdiction and waiver are correct. It is the district court that is wrong.

This lawsuit is, to date, a story of un-neighborly overreach by Texas. Jones insists upon having a Texas lawsuit against a Tennessee company that does business in Tennessee and Georgia, even though it has zero connection to Texas beyond contracting with a Texas company in Georgia and then mailing invoices to a Texas

41

accounting office designated by that company. After specially appearing, the foreign defendant received a May 13, 2014 court order allowing less than 6 months before expert designations were due, less than 7 months before a discovery cutoff, and less than 8 months to trial. It engaged in discovery in preparation to defend itself at trial if its special appearance were denied, only to be told that (contrary to the plain text of R. 120a) using the discovery process waived its challenge to personal jurisdiction. This is a Twilight Zone experience for a hapless foreigner whom Jones had no basis to sue in Texas. The district court's denial of the special appearance violates due process, as seen in controlling precedent, and begs for correction.

## CONCLUSION AND PRAYER

Nationwide Distribution Services, Inc. therefore prays that

a.      the Order denying its Special Appearance be reversed;

b.      this court render judgment sustaining its Special Appearance because the undisputed facts establish lack of personal jurisdiction over and lack of waiver by appellant, as a matter of law, and

c.      for such further relief to which appellant may be entitled.

Respectfully submitted,

RAMEY, CHANDLER, QUINN & ZITO, P.C.

By:    /s/ *Jack McKinley*
        Jack McKinley

42

State Bar No. 13716300
Robert L. Ramey
State Bar No.  16498200
750 Bering, Suite 600
Houston, Texas 77057
Telephone:  (713) 266-0074
Facsimile:  (713) 266-1064
jmm@ramey-chandler.com

COUNSEL FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that in compliance with Tex. R. App. P. 9.4(e), this Brief has been prepared using conventional typeface  no smaller than 14-point for text and 12-point for footnotes, and contains 10085 words (excluding any parts exempted by Tex. R. App. P. 9.4(i)(1)).

/s/ *Jack McKinley*
JACK McKINLEY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Brief of Appellant** has been served upon all counsel of record, in accordance with the rules, as follows:

Jason A. Itkin                                   *Via e-service*
Cory D. Itkin
Noah M. Wexler
Arnold & Itkin, LLP
6009 Memorial Drive
Houston, Texas 77007
*Counsel for Appellee,*
*Robert Jones*

Ruark D. Mershon                          *Via e-service*
2000 W. Marshall Drive
Grand Prairie, Texas 75051
*Counsel for Appellee,*
*Poly Trucking, Inc.*

on this ____8th____ day of ___May___, 2015.

　　　　　　　　　　　　　　　　__/s/ *Jack McKinley*_____
　　　　　　　　　　　　　　　　JACK McKINLEY

NO. 01-15-00232-CV

IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS

NATIONWIDE DISTRIBUTION SERVICES, INC.,
Appellant

*vs.*

ROBERT JONES and POLY TRUCKING, INC.,
Appellees

**APPELLANTS' APPENDIX**

Order Overruling Defendant's Special Appearance
(Signed February 23, 2015).. .......................................................... TAB 1

2/20/2015 9 55 35 AM
Chris Daniel - District Clerk
Harris County
Envelope No 4224121
By RODRIGUEZ, JIMMY E
Filed 2/20/2015 9 55 35 AM

CAUSE NO 2013-64642

| | | |
|---|---|---|
| Robert Jones | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | HARRIS COUNTY, TEXAS |
| v | § | |
| | § | |
| Kimberly-Clark Corporation, | § | |
| Kimberly-Clark Services, Inc , | § | |
| Kimberly-Clark World-Wide, Inc , | § | |
| Nationwide Distribution Services, Inc , | § | |
| and Nationwide Express Inc | § | |
| *Defendants* | § | 133rd JUDICIAL DISTRICT |

## ORDER OVERRULING DEFENDANTS SPECIAL APPEARANCE

The Court has considered Defendant Nationwide Distributions Services, Inc 's Special Appearance, all responsive briefing, the Court's file in this matter, and/or the arguments of counsel and finds that the special appearance lacks merit and should be overruled

It is therefore **ORDERED** that Defendant Nationwide Distributions Services, Inc 's Special Appearance is in all things **DENIED/OVERRULED**

SIGNED this 23 day of _____ 2015

_____
Presiding Judge

121